THE STATE OF OHIO, APPELLEE, *v.* WICKLINE, APPELLANT.

[Cite as State *v.* Wickline (1990), 50 Ohio St. 3d 114.]

(No. 89-310—Submitted February 21, 1990—Decided April 11, 1990.)

*Michael Miller,* prosecuting attorney, and *Joyce S. Anderson,* for appellee.

*Randall M. Dana,* public defender, *Randall L. Porter, Joann Bour-Stokes, Jane P. Perry* and *Kathleen A. McGarry,* for appellant.

DOUGLAS, J. The bodies of Peggy and Christopher have never been found. Prior to trial, appellant moved for the disclosure of all evidence favorable to him. Subsequently, appellant also moved to compel the discovery of "all evidence favorable to * * * [appellant], including but not limited to all evidence the police have concerning the whereabouts of Christopher M. Lerch and his wife, Peggy Ann Lerch which may have been gathered by various police departments pursuant to missing persons reports filed on August 25, 1982."

During appellant's trial, and after Teresa Kemp testified, appellant became aware of certain information which was not provided to appellant prior to trial. Specifically, appellant became aware of certain records maintained by the Blendon Township Police Department ("Blendon records"). Appellant moved for a mistrial. The panel then conducted a hearing to determine what relief, if any, appellant was entitled to receive in light of the mid-trial discovery. All the alleged exculpatory materials were admitted into evidence and appellant's motion was overruled. No continuance was granted as appellant specifically stated that he did not want a continuance.

## I

Appellant, in his first proposition of law, contends that the Blendon records were material, favorable and exculpatory as to the issue of his guilt. Appellant argues that the state's failure to provide the records to appellant prior to trial requires a new trial. We reject appellant's contention for three reasons.

First, in *Brady* v. *Maryland* (1963), 373 U.S. 83, 87, the United States Supreme Court held that:

"* * * The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

However, in *United States* v. *Agurs* (1976), 427 U.S. 97, 103, it was stated:

"The rule of *Brady* * * * arguably applies in three quite different situations. Each involves the discovery, *after trial*, of information which had been known to the prosecution but unknown to the defense." (Emphasis added.)

As the alleged exculpatory records were presented *during* the trial, there exists no *Brady* violation requiring a new trial.

Second, Crim. R. 16(E) regulates discovery. Crim. R. 16(E)(3) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, *the court may order such party to permit the discovery or inspection, grant a continuance*, or prohibit the party from introducing in evidence the material not disclosed, *or it may make such other order as it deems just under the circumstances*." (Emphasis added.)

We find that there were means available to appellant which were less drastic than the panel ordering a new trial. Pursuant to Crim. R. 16(E)(3), the panel's discretion to make just orders under the circumstances, and the power to order a continuance, were remedies that could have been sought by appellant, but he apparently declined to do so. These remedial powers were sufficient under the circumstances to ensure appellant was fairly tried. Appellant essentially argues that no remedial order could have ensured his fair trial since Kemp had already testified. However, pursuant to Crim.

R. 16(E)(3), the court was empowered to order Kemp's return and make her available for continued cross-examination.

Third, in *State* v. *Johnston* (1988), 39 Ohio St. 3d 48, 529 N.E. 2d 898, paragraph five of the syllabus, we held that:

"In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. (*United States* v. *Bagley* * * * [1985], 473 U.S. 667, followed.)"

We have reviewed the Blendon records and, for the most part, the materials consist of hearsay, speculation and "anonymous tips." Most of appellant's contentions are unsupported by the records themselves. In any event, we fail to see how the outcome of appellant's trial could have been different had the Blendon records been disclosed prior to trial. Further, the Blendon records were admitted into evidence and reviewed by the panel.

Finally, appellant contends that he would not have waived his right to trial by jury had the Blendon records been available to him prior to trial. Appellant argues that he was denied the opportunity to make an "informed choice" between being tried by a panel or by a jury. Therefore, appellant asks us to grant a new trial. However, at oral argument before this court, appellant stated that even if he had elected to be tried by a jury and the Blendon records were discovered at trial, nevertheless, prejudicial error would have occurred. In effect, appellant is asking this court to hold that under any circumstance, mid-trial discovery of evidence is prejudicial error. This is so because the decision between being tried before a panel or a jury is naturally made prior to any mid-trial discovery. Thus, an argument could be made at every trial that the choice between panel and jury would have been different had the mid-trial discovery been available before trial. Therefore, appellant's "informed choice" argument is not premised on his waiver of trial by jury but, rather, brings us back to the contentions regarding *Brady*, *supra*, and Crim. R. 16 that we have just rejected.

Accordingly, appellant's first proposition of law is not persuasive.

## II

Appellant, in his second proposition of law, alleges that his convictions were based solely on the uncorroborated testimony of an accomplice, *i.e.*, Teresa Kemp, in violation of former R.C. 2923.03(D), which provided:

"No person shall be convicted of complicity under this section solely upon the testimony of an *accomplice*, unsupported by other evidence." (Emphasis added.)

According to common usage,[1] the term "accomplice" means:

"* * * [O]ne who *is guilty* of complicity in crime charged, either by being present and aiding or abetting in it, or having advised and encouraged it, though absent from place when it was committed, though mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, no matter how reprehensible it may be, to con-

---

[1] See R.C. 1.42.

stitute one an accomplice. One is liable as an accomplice to the crime of another if he gave assistance or encouragement or failed to perform a legal duty to prevent it with the intent thereby to promote or facilitate commission of the crime. * * *'' (Emphasis added.) Black's Law Dictionary (5 Ed. 1979) 16.

Certainly, a person who *is guilty* of complicity must first be *found* guilty of complicity by either a judge or a jury. Obviously, the first step in finding a person guilty of an offense is by indicting that person. So, at the very least, an "accomplice" must be a person indicted for the crime of complicity.

In the case at bar, Kemp was never indicted and, hence, she could not have been an "accomplice" to either the murder of Christopher or Peggy Lerch.

Accordingly, we reject appellant's second proposition of law.

### III

Appellant, in his third proposition of law, argues that since the panel overruled his motion for the pretrial discovery of Kemp's statements, he was denied his rights under Crim. R. 16, his right to confrontation, and his right to the effective assistance of counsel.

Crim. R. 16(B)(1)(a) provides:

"Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i) Relevant written or recorded statements made by the defendant or *co-defendant,* or copies thereof;

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or *co-defendant* to a prosecuting attorney or any law enforcement officer;

"(iii) Recorded testimony of the defendant or *co-defendant* before a grand jury." (Emphasis added.)

We find, as did the court of appeals, that Kemp was not a "co-defendant" and, hence, appellant's contention that he was denied his rights under Crim. R. 16 fails. Black's Law Dictionary, *supra*, at 377, defines a "defendant" as:

"The person defending or denying; the party against whom relief or recovery is sought in an action or suit or the accused in a criminal case. * * *''

A "co-defendant" is defined as:

"More than one defendant being sued in the same litigation; or, more than one person charged in same complaint or indictment with same crime." *Id.* at 233.

Kemp was not a "defendant," nor was Kemp indicted or charged in connection with the Lerches' murders. Thus, Kemp was not a "co-defendant" and Crim. R. 16(B)(1)(a) is inapplicable.

As to appellant's confrontation argument, we note that appellant *did* cross-examine Kemp at trial. We fail to see how appellant can claim that he was denied the right to confront his accusers. The Confrontation Clause is not a pretrial discovery device. See, *e.g., Pennsylvania* v. *Ritchey* (1987), 480 U.S. 39, 52. Nor do we believe that overruling appellant's discovery request denied appellant effective assistance of counsel.

Accordingly, we find that appellant's third proposition of law is unpersuasive.

### IV

Appellant, in his fourth proposi-

tion of law, asks this court to hold, "* * * that there must be some testimony establishing the *corpus delicti* [of the crime] prior to the admission of a joint participant's * * * testimony." We reject appellant's invitation to do so. In any event, we find that the *corpus delicti* of the crime was established even if we were to consider extending the rule to include joint participants.

V

Appellant, in his fifth proposition of law, argues that appellee's failure to provide timely discovery of witnesses and alleged exculpatory materials requires a reversal of appellant's convictions.

We disagree. Appellant's *Brady* arguments have been previously rejected and we will not revisit these arguments. See discussion in Part I, *supra*. Appellant has conceded the fact that except for Kemp's address, appellee complied with discovery. Appellant also concedes that he was able to interview all of appellee's important witnesses prior to trial. We fail to see how appellant suffered prejudice when he was satisfied with discovery and interviewed appellee's witnesses.

As appellee correctly notes, pretrial discovery is governed by Crim. R. 16 and not by the Constitution under the circumstances in the case *sub judice*. See discussion in Part III, *supra*.

We reject appellant's fifth proposition of law.

VI

Next, in his sixth proposition of law, appellant alleges that a hearing was conducted in his absence regarding a pretrial discovery request that appellee provide appellant with Kemp's prior statements. Appellant argues that this *ex parte* hearing was required to have been recorded. The record before us merely discloses the fact that certain evidence was to be reviewed and not that a hearing was conducted in appellant's absence.

Appellant argues that even if no *ex parte* hearing had occurred, the records reviewed by the panel should have been made part of the record for purposes of appellate review. Further, appellant contends that he was prejudiced by the panel's failure to state its essential findings of fact in overruling appellant's motion. We find that, in accordance with the definitions of "defendant" and "co-defendant," there was no conceivable way that Kemp could have been considered either such person and, hence, appellant suffered no prejudice. See discussion in Part III, *supra*.

Appellant's sixth proposition of law is not persuasive.

VII

Appellant, in his seventh proposition of law, contends that his convictions must be reversed because evidence was introduced at trial concerning illegal activities which, in appellant's view, were unrelated to appellant's present convictions. Specifically, appellant contends that testimony regarding three driver's licenses, his ownership of guns and his ownership of a machine allegedly capable of making driver's licenses violated Evid. R. 404(B) and was either irrelevant or prejudicial.

We note that appellant failed to object to the testimony.[2] Appellant's failure to object constitutes a waiver of error, if any, involved. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, para-

---

[2] Appellant did object to the admissibility of the licenses themselves.

graph one of the syllabus, vacated in part on other grounds, *Williams* v. *Ohio* (1978), 438 U.S. 911; *State* v. *Broom* (1988), 40 Ohio St. 3d 277, 288-289, 533 N.E. 2d 682, 695-696. Therefore, our discretionary review of appellant's proposition must proceed, if at all, under the plain error analysis of Crim. R. 52(B). *Broom, supra.* Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. See, *e.g., State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph two of the syllabus; *State* v. *Greer* (1988), 39 Ohio St. 3d 236, 252, 530 N.E. 2d 382, 401.

Evidence of other crimes, wrongs or bad acts independent or unrelated to the offense for which a defendant is on trial is generally inadmissible to show criminal propensity. See, *e.g., State* v. *Williams* (1988), 38 Ohio St. 3d 346, 351, 528 N.E. 2d 910, 917. However, in the case at bar, the evidence at issue was not used for an impermissible purpose. The evidence of appellant's ownership of guns corroborated Kemp's testimony regarding the fact that appellant owned a gun which was used in hitting Christopher prior to the murders. The evidence of the ownership of a license machine and the licenses themselves were used to establish the ownership of other relevant materials. Further, we question whether the evidence at issue could be considered evidence of other crimes, wrongs or bad acts. This so-called driver's license machine was not really such a machine at all. Finally, we find that the evidence at issue was relevant and was not prejudicial.

Accordingly, we find no error, plain or otherwise, and appellant's seventh proposition of law is not well-taken.

## VIII

In his ninth proposition of law, appellant urges the vacating of his death penalty sentence based upon what appellant views as improper statements made by appellee during closing argument in the mitigation phase of the trial. However, appellant failed to object to the statements and, thus, appellant waived the errors, if any, involved. In the absence of plain error, appellant's sentence will not be vacated. See discussion in Part VII, *supra.*

During closing argument in the mitigation phase, the prosecutor stated, "[w]ell, we know from the trial that he [appellant] has had a substantial history [criminal] there * * * [w]hat else is he going to say, that he's had a significant criminal history." Appellant contends that appellee created a non-statutory aggravating circumstance by arguing the absence of the R.C. 2929.04(B)(5) mitigating factor since appellant did not attempt to prove this (B)(5) factor.

Prior to the prosecutor's statements, appellant seemingly argued that, while appellant's criminal history is extensive, it does not show a propensity for violence. We find that appellant did, indeed, attempt to use his lack of a violent criminal history as evidence in mitigation. In *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 254-255, 527 N.E. 2d 844, 848-849, we held that the introduction of a prior criminal record was admissible for purposes of refuting mitigating evidence offered to show appellant's history, character and background. Thus, in the case at bar, the statement by the prosecutor was clearly within the permissible bounds of refuting appellant's attempt to establish the mitigating evidence. Therefore, we find no error, plain or otherwise.

Additionally, appellant contends

that the following statements by the prosecutor require the vacating of the death sentence: "* * * [t]he [appellant] * * * has been in jail before. Jail essentially holds no terror for this man. There's a letter * * * about how he [appellant] goes to jail and essentially flourishes in jail, how he goes to jail and works out, and comes out feeling like a million dollars." Appellant contends that appellee's statements amount to a violation of the United States Supreme Court's pronouncement in *Skipper* v. *South Carolina* (1985), 476 U.S. 1.

We disagree. *Skipper* stands for the proposition that a capital defendant may not be denied the opportunity to present evidence that he would not pose a danger if his life were spared. *Id.* at 5. Thus, *Skipper* is inapplicable to the case *sub judice*. Nor do we accept appellant's contentions that appellee's arguments amounted to a non-statutory aggravating circumstance. We agree with the court of appeals that "* * * the prosecution's assertion that appellant seemed to thrive on prison life was a realistic argument for the death penalty which the prosecutor must raise in order to prove that the aggravating circumstances outweighed all the mitigating factors." Therefore, we find no error, plain or otherwise.

Next, the prosecutor compared appellant's dismembering the bodies of his victims to the disposing of Jewish bodies at Nazi concentration camps. We find that these statements fall within the latitude afforded counsel in closing argument. See, *e.g., State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 32, 526 N.E. 2d 274, 279. In any event, we do not find that in the absence of the statements, the outcome of the trial would clearly have been otherwise and, accordingly, appellant was not prejudiced by the statements.

Appellant further argues that the prosecutor's remarks regarding appellant's lack of remorse require the vacating of the death sentence. We find that the remarks concerned appellant's lack of remorse at the time of the murders and, hence, the remarks were proper in arguing why the merged aggravating circumstance of the crimes outweighed the mitigating factors. We do not find that the state's argument created a non-statutory aggravating circumstance. Therefore, we find no error, plain or otherwise.

Finally, appellant argues that the prosecutor's reading of a certain passage[3] requires the vacating of the death sentence. We have reviewed and rejected an argument like the one appellant presents. See, *e.g., State* v. *Bedford* (1988), 39 Ohio St. 3d 122, 124, 529 N.E. 2d 913, 916-917. As appellant presents us with no compelling reason why we should not adhere to our previous position on this issue, we reject appellant's contention.

Appellant's ninth proposition of law is not persuasive.

## IX

Appellant, in his tenth proposition of law, contends that his death sentence must be vacated since the state presented duplicative aggravating circumstances which, in appellant's view, should have been merged prior to the penalty phase of appellant's trial.

In the case at bar, appellant was found guilty of two aggravating specifications, *i.e.,* R.C. 2929.04(A)(3) and (A)(5), which provide:

"(3) The offense was committed for the purpose of escaping detection,

---

[3] The referenced passage was taken from the United States Supreme Court's opinion in *Gregg* v. *Georgia* (1976), 428 U.S. 153, 183.

apprehension, trial, or punishment for another offense committed by the offender.

"* * *

"(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender."

In *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph five of the syllabus, we held that:

"In the penalty phase of a capital prosecution, where two or more aggravating circumstances arise from the same act or indivisible course of conduct and are thus duplicative, the duplicative aggravating circumstances will be merged for purposes of sentencing. Should this merging of aggravating circumstances take place upon appellate review of a death sentence, resentencing is not automatically required where the reviewing court independently determines that the remaining aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt and that the jury's consideration of duplicative aggravating circumstances in the penalty phase did not affect the verdict."

In the case at bar, both aggravating circumstances arose from the same act or indivisible course of conduct, *i.e.,* the killing of Peggy Lerch. Thus, the aggravating circumstances are duplicative. However, unlike *Jenkins,* the case *sub judice* was tried before a three-judge panel. We assume that the panel did not artificially inflate the aggravating circumstances. See, *e.g., State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O.

2d 132, 136, 239 N.E. 2d 65, 70. As such, we find that the sentencing decision was reliable.

Further, the court of appeals merged the aggravating circumstances for purposes of the independent sentencing determination and, nevertheless, concluded that the merged aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt.

In reviewing the entire record, we find that the capital sentencing decision was not arbitrary or capricious. We find that the panel did not artificially inflate the aggravating circumstances and that the merged aggravating circumstance resulted in the affirmation of the death penalty upon the independent review conducted by the court of appeals.

Therefore, we reject appellant's tenth proposition of law.

X

In his eleventh proposition of law, appellant seeks reversal of his convictions for failure to record Kemp's grand jury testimony. Appellant relies primarily on Crim. R. 22, which provides in relevant part: "[i]n serious offense cases all proceedings shall be recorded."

In *State* v. *Grewell* (1989), 45 Ohio St. 3d 4, 543 N.E. 2d 93, syllabus, we held that, "Crim. R. 22 applies to grand jury proceedings. Pursuant to Crim. R. 22, grand jury proceedings in felony cases *must* be recorded." (Emphasis added.) Although error is committed when grand jury testimony is not recorded, the error is harmless if there exists no showing of a particularized need for the testimony. *Id.* at 9, 543 N.E. 2d at 98.

We find that appellant has failed to state reasons sufficient to constitute a particularized need for the grand jury testimony. In the absence of such a

showing, the error in failing to record the grand jury testimony was harmless. *Id.*

We reject appellant's eleventh proposition of law.

## XI

Appellant, in his twelfth proposition of law, alleges that appellee failed to disclose the results of polygraph examinations given to appellee's witnesses. Appellant bases his argument upon the following remarks made by the prosecutor: "Probably there was [polygraph tests of the state's witnesses], but I don't know for sure. I would have to find out."

Upon review of the entire record, we find no evidence that polygraph test results exist or that polygraph tests were conducted and, accordingly, we reject appellant's twelfth proposition of law.

## XII

In his thirteenth proposition of law, appellant contends that the panel erred in failing to grant his motion for acquittal since, according to appellant, there exists insufficient evidence to sustain his convictions. Similarly, in his fourteenth proposition of law, appellant argues that his convictions and death sentence were contrary to the manifest weight of the evidence. We reject appellant's contentions. In *State v. Cotton* (1978), 56 Ohio St. 2d 8, 10 O.O. 3d 4, 381 N.E. 2d 190, paragraph three of the syllabus, we held that:

"Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

In the case at bar, appellant beat Christopher Lerch repeatedly during the course of an argument concerning money. Kemp's testimony, if believed, justified the findings by the panel:

"Well then he got calm. He got so calm.

"Q. Who was that, Mr. Wickline?

"A. Bill, yes, and I thought that everything, you know, the argument and everything was over with.

"The money wasn't ever mentioned after that. It was like it was forgotten. It was never mentioned.

"And then I remember that Bill walked upstairs, very calmly, and after he was up there a few minutes he called for Chris.

"He said, 'Chris, come and help me with the toilet.'

"And I don't know how long they were up there. I know that I had time to tell Peggy that I was sorry. Thank God I told her I was sorry.

"And then Bill came downstairs, and Chris wasn't with him, and I said —

"Q. Did you hear anything?

"A. I didn't hear anything. I didn't hear anything, and then in the meantime Peggy had laid down on the floor and passed out, or fell asleep.

"And I said, 'Bill, where is Chris'?

"Jesus Christ.

"And he said, 'I took him out.' And I didn't understand what that meant.

"When I run upstairs and I looked in the bathroom, Chris was in the bathtub with his throat cut, and I walked downstairs.

"Q. Was he alive?

"A. No. No. And I ran downstairs, and I tried to go out the door, but Bill said, 'We have to take care of Peggy. We have to.'

"And I didn't understand. I just didn't understand what was going on.

"And he said, 'Hold her legs now before she wakes up.'

"Q. What did you say?

"A. And I said 'Bill, I can't,' and he said, 'Now, before she wakes up.'

"And I knelt down, Jesus Christ, and I held Peggy's legs while Bill strangled her, and then she was dead, too, oh God, and then —

"Q. How did he strangle her?

"A. With a white rope.

"Q. Just a piece of rope?

"A. Yeah. It was a piece of rope with, it looked like that he had planned it or something because it was wrapped with white tape, you know, and it had handles on it.

"I don't remember, I didn't look. I didn't look when he was doing it. I mean, I just closed my eyes and then she was dead, too."

Kemp's testimony, if accepted, establishes appellant's guilt beyond a reasonable doubt and, accordingly, we reject appellant's thirteenth and fourteenth propositions of law.

### XIII

Appellant, in his sixteenth proposition of law, contends that the introduction of certain exhibits at his trial was impermissible because, according to appellant, the evidence was the product of a "stale" or invalid search warrant. However, appellant failed to move for suppression of the evidentiary matters before trial. See Crim. R. 12. Additionally, appellant failed to object to the materials at trial and, thereby, waived error, if any, involved. See discussion in Part VII, *supra.*

### XIV

In his seventeenth and twenty-first propositions of law, appellant argues that Ohio's death penalty scheme is unconstitutional. In a long line of cases, we have held that the Ohio death penalty statute is constitutional. See, *e.g., State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795;

*State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E 2d 768; *State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585; and *Jenkins, supra.*

As appellant presents us with no compelling reason why we should now find the statute to be unconstitutional, we reject appellant's seventeenth and twenty-first propositions of law.

### XV

Appellant, in his eighteenth and twentieth propositions of law, invites this court to conduct a proportionality review by reviewing all cases involving a capital charge in Franklin County and by comparing appellant's punishment with the lack of punishment imposed upon Kemp.

In *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, paragraph one of the syllabus, we held that:

"The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed."

As we continue to believe that our proportionality review ensures a fair sentencing determination, we reject appellant's eighteenth and twentieth propositions of law.

### XVI

In his eighth proposition of law, appellant alleges that he was denied the effective assistance of counsel in the guilt phase of his trial.

In *Strickland* v. *Washington* (1984), 466 U.S. 668, 687, the United States Supreme Court stated:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First, the defendant must*

*show that counsel's performance was deficient.* This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Second, the defendant must show that the deficient performance prejudiced the defense.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (Emphasis added.)

As to the required showing of "prejudice," the court went on to state that "* * * [t]he defendant must show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

For the most part, appellant bases his ineffective-assistance-of-counsel argument on the same matters alleged or argued in appellant's first, second, third and seventh propositions of law. We have already reviewed each of these propositions. See discussion in Parts I, II, III and VII, *supra.*

Further, appellant alleges that his counsel admitted that the evidence adduced at trial was sufficient to prove that appellant had specifically intended to kill Peggy Lerch. We find that appellant's counsel did not make such an admission. Rather, counsel was arguing that although there was evidence of specific intent to kill Peggy, the evidence of intent was not enough, absent corroboration, and that no evidence existed regarding the intent to kill Christopher Lerch.

In addition to these contentions, appellant claims that his counsel's performance was deficient because defense counsel admitted the Blendon records into evidence and these records contained damaging hearsay evidence which, in appellant's view, should have been redacted from the records prior to their admission into evidence. We find, as did the court of appeals, that the Blendon records were admitted into evidence for purposes of determining what relief, if any, appellant was entitled to on appellant's motion for a mistrial. There was nothing in the record that suggested that the panel relied upon the Blendon records which contained unreliable hearsay statements. The evidence presented at trial was much more reliable than the hearsay statements contained in the Blendon records, and the evidence presented at trial was ample to support the conclusion that appellant committed the murders of Peggy and Christopher Lerch.

Therefore, we reject all appellant's arguments since, assuming *arguendo* that appellant has proved a deficiency in counsel's performance, appellant has failed to establish that he was prejudiced by the deficiency.

Finally, on cross-examination, damaging evidence was elicited from appellant's own witnesses and, therefore, appellant claims that his attorney was not functioning as "counsel" within the meaning of *Strickland.* We find that defense counsel's strategy in presenting witnesses on appellant's behalf fell within the range of reasonable professional assistance.

We have reviewed each and every alleged error. Pursuant to our review, we have found no error which in any way undermines the integrity of appellant's convictions and, accordingly, we reject appellant's eighth proposition of law.

## XVII

In his fifteenth proposition of law, appellant claims that he was denied the effective assistance of counsel in the mitigation phase of his trial.

For the most part, appellant relies upon the failure of his counsel to object to the statements that we have discussed in Part VIII, *supra*. As we have reviewed every statement in question and have found no prejudicial error, appellant has failed to show that he was denied the effective assistance of counsel. See discussion in Part XVI, *supra*. Likewise, we have addressed the duplicative aggravating circumstances and we have determined that the appellant was not prejudiced by the duplication and that the court of appeals did, indeed, merge the two aggravating circumstances. See discussion in Part IX, *supra*.

Additionally, appellant argues that his counsel's strategy in the mitigation phase denied appellant the effective assistance of counsel. We disagree. Unlike most cases, a statement of counsel's strategy is contained in the record before us and we are convinced, as was the court of appeals, that the manner in which appellant was represented at the mitigation phase was the result of an informed and tactical strategy. Further, we do not conclude that the sentencing decision would have been different even if we were to assume that counsel's performance was deficient.

In his nineteenth proposition of law, appellant contends that he was denied the effective assistance of counsel in the mitigation phase of his trial because defense counsel listened to appellant and apparently planned the trial strategy with appellant's assistance. We find no merit to this argument.

We find that appellant's fifteenth and nineteenth propositions of law are not persuasive.

## XVIII

Finally, we must independently review the death sentence for appropriateness and proportionality. For purposes of a review, we have merged the R.C. 2929.04(A)(3) and (A)(5) aggravating circumstances. See discussion, Part IX, *supra*.

Appellant killed Christopher Lerch and then killed Peggy Lerch to escape detection of the first killing. We find that the merged circumstance is proved beyond a reasonable doubt.

Appellant introduced evidence on the mitigating factor that the crimes were committed because appellant was under duress, coercion or strong provocation, R.C. 2929.04(B)(2); that Peggy Lerch induced or facilitated her own death, R.C. 2929.04(B)(1); and that Peggy's body was never found. We conclude that the R.C. 2929.04 (B)(1) and (B)(2) factors are entitled to some, but very little, weight in mitigation. Further, we do not believe that the manner in which appellant disposed of Peggy's body amounts to a mitigating factor.

Weighing the various mitigating factors against the merged aggravating circumstance, we conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

As our final task, we have undertaken a comparison of the sentence in this case to those cases in which we have previously imposed the death penalty. We find that appellant's death sentence is neither excessive nor disproportionate. See, *e.g., State* v. *Hooks* (1988), 39 Ohio St. 3d 67, 529 N.E. 2d 429.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.