The STATE of Ohio, Appellee,

v.

CARDOSI, Appellant.

[Cite as *State v. Cardosi* (1997), 122 Ohio App.3d 70.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95–CA–0126.

Decided Jan. 17, 1997.

*Stephen A. Schumaker,* Clark County Prosecuting Attorney, for appellee.

*S. Todd Brecount,* for appellant.

GRADY, Judge.

Dale Alan Cardosi II appeals from his conviction and sentence for felonious sexual penetration, R.C. 2907.12, which were entered upon the guilty verdicts returned by a jury. On appeal, Cardosi challenges several of the trial court's rulings on admissibility of evidence concerning the statements of the alleged victim, a four-year-old child, concerning her sexual contact with Cardosi. We find no error in those rulings. Accordingly, we will affirm the judgment of the trial court.

72

I

Dale Alan Cardosi slept at the home of Charles Cox and Michelle Atchison on April 22, 1994, following an evening of drinking and playing cards. Cardosi shared a bedroom with their two young children, Leah and Bubby. Michelle Atchison drove Cardosi home the following day.

In the late evening hours of April 23, Atchison decided to give Leah a bath. Leah attempted to urinate before taking her bath, and then began screaming. Atchison asked Leah what was wrong. Leah stated that she couldn't "pee" and that her "pookie" hurt. "Pookie" is the term Leah uses to describe her vaginal area. When Atchison asked Leah why her pookie hurt, Leah stated that Alan had hurt her pookie, and that he had big fingers and big fingernails. At her mother's request Leah immediately went downstairs and repeated the statements to her father.

Atchison took Leah to the emergency room at Community Hospital, in Springfield. Dr. Allen Meske examined Leah and found evidence of vaginal penetration: redness, swelling, and fresh abrasions on and inside the vagina. In response to Dr. Meske's questions, Leah indicated that someone had put a finger inside her vagina.

Police were summoned to the hospital. When Leah spoke with Officer Hopper at the hospital, she stated that Alan had lain on top of her and had hurt her pookie.

On April 28, 1994, Leah spoke with Stefanie Falke from Clark County Children's Services. Leah told Falke that Alan hurt her pookie with his finger, and that he had big fingers. In using anatomically correct dolls to demonstrate what had happened, Leah put the male doll on top of the female doll and then rocked the male doll back and forth. On May 9, 1994, Falke once again spoke with Leah. This time Leah indicated that Alan had hurt her with his finger and with his penis.

Dale Cardosi was indicted on one count of rape, R.C. 2907.02, and one count of felonious sexual penetration, R.C. 2907.12. After hearings, the trial court found that Leah was incompetent to testify at trial. At the state's request, the trial court held a hearing pursuant to Evid.R. 807 on the admissibility of Leah's out-of-court statements to her mother, her father, Officer Hopper, and Stefanie Falke. The trial court held that Leah's statements were admissible.

Cardosi was found not guilty following a jury trial of the rape charge, but guilty of felonious sexual penetration. The trial court sentenced Cardosi according to law.

## II

Cardosi has timely appealed to this court from his conviction and sentence. He presents three assignments of error, which raise evidentiary issues typically involved in child abuse cases. The prosecutor has not filed an appellate brief.

### First Assignment of Error

"The trial court erred in the interpretation of Rule 807 of the Ohio Rules of Evidence with respect to the determination that the hearsay statements of Leah Cox could be admitted at trial through the testimony of other persons and, thereafter, the trial court committed plain error in the allowance of said statements of Leah Cox to be presented to the trier of fact, and in doing so, the court failed to uphold the confrontation clause of the Sixth Amendment of the U.S. Constitution."

■■■ A review of the record demonstrates that Cardosi did not object at the time of trial to testimony by any of the witnesses concerning what Leah had said to them about the sexual acts that were performed on her. Accordingly, any error in the admission of that evidence has been waived by the failure to object, unless that error rises to the level of "plain error." *State v. Wickline* (1990), 50 Ohio St.3d 114, 552 N.E.2d 913. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

Evid.R. 807, the child abuse exception to the hearsay rule, provides:

"(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:

"(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the

statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.

"(2) The child's testimony is not reasonably obtainable by the proponent of the statement.

"(3) There is independent proof of the sexual act or act of physical violence.

"(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness."

Cardosi argues that the evidence in this case fails to demonstrate that Leah's testimony was "not reasonably obtainable," as that phrase is used in Evid.R. 807(A)(2). In that regard, Evid.R. 807(B) provides:

"(B) The child's testimony is 'not reasonably obtainable by the proponent of the statement' under division (A)(2) of this rule only if one or more of the following apply:

"(1) The child refuses to testify concerning the subject matter of the statement or claims a lack of memory of the subject matter of the statement after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify.

"(2) The court finds all of the following:

"(a) The child is absent from the trial or hearing;

"(b) The proponent of the statement has been unable to procure the child's attendance or testimony by process or other reasonable means despite a good faith effort to do so;

"(c) It is probable that the proponent would be unable to procure the child's testimony or attendance if the trial or hearing were delayed for a reasonable time.

"(3) The court finds both of the following:

"(a) the child is unable to testify at the trial or hearing because of death or then existing physical or mental illness or infirmity;

"(b) The illness or infirmity would not improve sufficiently to permit the child to testify if the trial or hearing were delayed for a reasonable time."

The record does not demonstrate that Leah's testimony was unavailable to the state because she refused to testify, or because she claimed a lack of memory, or because of her physical or mental infirmity. Rather, the trial court found that

Leah's testimony was "not reasonably obtainable" by the state because the court had ruled that she was not competent to testify as a witness.

Cardosi does not challenge the finding that Leah was not competent to testify. Instead, he argues that the finding does not satisfy the criteria of Evid.R. 807(B).

Evid.R. 807(B)(2) concerns a child who is "absent" from the hearing and whose attendance and testimony cannot be obtained by the proponent of the child's out-of-court statement, even after a reasonable delay. The condition of absence prescribed in the rule is not limited to situations of physical unavailability. It applies to any substantial impediment to the child's appearance as a witness in the proceeding. Certainly, a finding of incompetency does just that. Therefore, when a court finds that a child is not competent to be a witness, her testimony is "not reasonably obtainable" pursuant to Evid.R. 807(B)(2). See *State v. Rogers* (Dec. 9, 1993), Cuyahoga App. No. 63979, unreported, 1993 WL 515635.

Cardosi also argues that the state failed to prove that the circumstances surrounding the making of Leah's statements provide "particularized guarantees of trustworthiness," as required by Evid.R. 807(A)(1). That provision codifies the Sixth Amendment confrontation requirements which apply to the admission of hearsay statements. See *Idaho v. Wright* (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638. In order to be admissible, hearsay statements must possess sufficient "indicia of reliability," either by falling within a firmly rooted exception to the hearsay rule, or by possessing "particularized guarantees of trustworthiness." *Id.*

In determining whether a child's hearsay statement is trustworthy, *i.e,* whether it is particularly likely that the child was telling the truth at the time the statement was made, a trial court must consider the nonexhaustive list of factors set forth in Evid.R. 807(A)(1). In its decision admitting Leah's hearsay statements pursuant to Evid.R. 807, the trial court stated:

"This case was before the Court on the State's motion to admit out of Court statements made by the child victim.

"The Court finds that the child is four (4) years of age. The statements describe sexual acts performed on the child.

"The Court further finds that the totality of circumstances surrounding the making of the statements provides particularized guarantees of trustworthiness. These circumstances include the following:

"1. the act is alleged to have occurred during the morning hours of April 23, 1994, the first statement made to her mother and father about 11:00 p.m. that day; statements made at the hospital to hospital personnel and a police officer

within a few hours of the initial statements; statements made jointly to the Children's Service investigator and police detective were made within one and two weeks from the alleged incident;

"2. the child was not coached in regards to any statements, and each statement was given without any input from another person,

"3. there appears to be no outside influence or motive to falsify the statements;

"4. the statements were spontaneous and consistent;

"5. the questioning both at the hospital and, later, at Children's Services was not coercive or suggestive toward any particular response;

"6. the child's mental state was relatively calm, her demeanor was shy and quiet;

"7. the terminology used by the child was not unexpected of one her age;

"Under these circumstances the test of cross-examination would add little to the reliability of the statements."

Cardosi argues that, contrary to the trial court's findings, Leah's statements were not "spontaneous" because she was prodded into talking about the sexual abuse incident, and even then her communication was largely nonverbal responses to direct questions.

First, we note that Leah initially brought this incident to her mother's attention without any prompting, when her mother asked why she was screaming. Moreover, we think it is understandable that a child of tender years would be reluctant to talk about such a puzzling and traumatizing incident except in a question-and-answer format. With respect to the trustworthiness and reliability of Leah's statements, we believe it is far more important that no one coached or prodded Leah concerning what had happened to her and less important that Leah had to be encouraged to talk about those events.

Cardosi additionally argues that Leah's statements were "inconsistent." We disagree. Leah consistently indicated in her statements to her mother, her father, the emergency room physician, the police officer who talked to her at the hospital, and the Children's Services investigator that Cardosi had hurt her by inserting his finger into her vagina. On the second occasion when Leah spoke with the Children's Services investigator, Leah indicated that Cardosi had inserted both his finger and his penis into her vagina. Leah did not indicate that Cardosi had inserted his penis *instead of* his finger. We see no inconsistency in Leah's statements. Examining all of the circumstances surrounding Leah's statements, including those set forth in Evid.R. 807(A)(1), we agree with the trial

court that those circumstances demonstrate that Leah was likely to be telling the truth when she made her statements.

The requirements of Evid.R. 807(A)(1) through (4) have been satisfied in this case. We see no error, much less plain error, on the part of the trial court in admitting Leah's hearsay statements about her sexual abuse by Cardosi. The first assignment of error is overruled.

### Second Assignment of Error

"The trial court committed plain error in the allowance of Dr. Alan Meske, M.D., to testify at trial that he believed Leah Cox to be telling the truth with respect to the allegations regarding the defendant."

An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. Dale Cardosi argues that the rule was violated by the following testimony from Dr. Allen Meske, the emergency room physician who examined Leah:

"Q. Okay. Doctor, did you make a final assessment regarding this child's condition?

"A. Yes, I did.

"Q. And what was your final assessment of this child's condition?

"A. My assessment is that she sustained vaginal abrasions, appeared to have arisen out of sexual abuse.

"Q. And, Doctor, why do you feel that these vaginal abrasions resulted out of sexual abuse as opposed to some other type of injury?

"A. The history that I obtained was consistent with it; and, second of all, the patient's responses to my questioning was consistent with it; number three, the patient's behavior, I felt, was very impressive and consistent with this, in that I have examined other children this year on several occasions brought in by their parents for suspected abuse and have had markedly different kind of responses than what I received from Leah. Leah was very serious about this. When I've had to examine other children, oftentimes they're laughing and giggling and have absolutely no problem with my examining their perineum or their vaginal region; and Leah was very, very difficult as far as getting her to allow me to do this."

Cardosi failed to object to the admission of this evidence. Accordingly, any error has been waived unless it rises to the level of "plain error." *Wickline, supra.*

Dr. Meske did not testify that he believed Leah was telling the truth, or that he believed Leah was not fantasizing, or that in his opinion Leah had not

been programmed to make these accusations. Neither did Dr. Meske make some assessment of credibility. See *State v. McMahon* (Apr. 12, 1996), Clark App. No. 94–CA–49 and 94–CA–50, unreported, 1996 WL 173396. We do not consider Dr. Meske's testimony to be the equivalent of expressions of opinion relating to Leah's truthfulness. Rather, Dr. Meske explained the basis for his expert opinion that the medical evidence of vaginal penetration which he observed likely resulted from sexual contact. We see no violation of the rule in *Boston* and no error in admitting Dr. Meske's testimony, much less plain error.

The second assignment of error is overruled.

## Third Assignment of Error

"Because the ruling that the child's statements were not reasonably obtainable was based on a determination of incompetency, it was a denial of due process under the constitutions of the United States and Ohio to have a competency hearing after the Evid.R. 807 hearing."

On October 26, 1994, a hearing was held in the courtroom on Leah's competency to be a witness. At the conclusion of that hearing, the court ruled that Leah was not competent to testify.

On January 4, 1995, a hearing was held, pursuant to Evid.R. 807, on the admissibility of Leah's out-of-court statements concerning the sexual acts performed on her. The following day, January 5, 1995, a second competency hearing was held, this time in the court's chambers. Once again the trial court ruled at the conclusion of the hearing that Leah was not competent to testify.

On February 8, 1995, the trial court issued its decision and entry finding that the requirements of Evid.R. 807 had been satisfied and that Leah's out-of-court statements concerning her sexual abuse were admissible.

Cardosi argues that the October 26, 1994 finding that Leah was incompetent to testify cannot be a basis for the January 4, 1995 order permitting the state to introduce her out-of-court statements pursuant to Evid.R. 807 because the hearing on which the finding of incompetency was based was not held outside the courtroom, as R.C. 2317.01 requires. That requirement pertains to "a hearing in an abuse, neglect, or dependency case" held to determine whether a child is a competent witness. Those proceedings are brought pursuant to R.C. Chapter 2151 and are within the jurisdiction of the juvenile court. The requirement does not pertain to proceedings outside the juvenile court.

The third assignment of error is overruled.

### III

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FAIN, and FREDERICK N. YOUNG, JJ., concur.