OPINION
{¶ 1} Defendant-Appellant Gary Lee Pullen appeals his conviction and sentence for possession of crack cocaine. On appeal Pullen presents five assignments of error, all related to the trial court's decisions to admit and exclude certain evidence at trial. For the following reasons we affirm Pullen's conviction.
 {¶ 2} On the evening of August 29, 2001, several strike force officers were ordered to patrol the area of Williams, Riverview, Middle, and Edgewood. At about 11:00 or 11:30 p.m., the officers saw Pullen standing near an alley between Williams and Middle. When he saw the cruiser, he began to walk away. Officers Harshman and Hall pulled their cruiser alongside Pullen and asked if they could talk to him for a minute. Pullen briefly stopped and looked at the officers, then without responding, he began to run. Officers Hall and Harshman followed Pullen, and Officers Braun and Ables began to follow in a second cruiser. Officers Phillips and House, who were patrolling in an unmarked car, attempted to cut Pullen off.
 {¶ 3} As Pullen ran, Officers Braun and Ables saw him throw what appeared to be a baggie into a fenced yard. Pullen continued to run a little further before giving up. After Pullen was stopped, Officer Ables returned to the yard and recovered a baggie that contained what looked like crack cocaine. Officer Hall field tested the contents of the baggie, which proved to be crack cocaine. Pullen was arrested.
 {¶ 4} After Pullen was in custody, three individuals stepped off of the porch of a known drug house, and one of them, Shane Skipper, walked briskly toward the officers. Fearing for the officers' safety, Officer Phillips told Skipper to get back on the sidewalk. Skipper ignored Phillips, who ultimately arrested Skipper for public intoxication.
 {¶ 5} The Montgomery County Grand jury indicted Pullen on one count of possessing crack cocaine in an amount that is greater than one gram, but less than five grams. Pullen filed a motion to suppress and a supplement to that motion. The trial court overruled the motion.
 {¶ 6} Pullen filed several other pre-trial motions, including motions for independent analyses of the substance in the baggie and of fingerprints that might be found on the baggie. The trial court granted the request to have Larry Dehus appointed to analyze the crack, but the court failed to rule on the request to have Hoyt Baumgardner appointed to perform an independent fingerprint analysis. Subsequently, Ronald Huston, a fingerprint examiner at the Miami Valley Regional Crime Lab, found no latent prints of value on the baggie.
 {¶ 7} Pullen's case proceeded to a jury trial. The defense called Baumgardner as an expert witness in the field of fingerprint development and analysis. The following week the trial court issued an entry appointing Baumgardner as a defense expert, permitting his services to be paid by the State. Pullen also sought to have Dehus testify as a fingerprint expert. However, after hearing Dehus' qualifications, the trial court determined that he is not an expert in that field. Pullen proffered Dehus' testimony and his curriculum vitae for the record.
 {¶ 8} The jury found Pullen guilty as charged. The trial court sentenced him to a thirteen-month prison term. Pullen filed a timely notice of appeal.
 {¶ 9} Pullen's first assignment of error:
 {¶ 10} "THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE THAT THE OTHER INDIVIDUAL ARRESTED WITH MR. PULLEN, SHANE SKIPPER, HAD A HISTORY OF DRUG POSSESSION."
 {¶ 11} Pullen claims that the trial court should have allowed evidence that Shane Skipper had a history of drug abuse and possession because Skipper was arrested in the same area and at about the same time as Pullen. However, we believe that the trial court properly excluded irrelevant evidence of Skipper's prior arrest for a drug-related crime.
 {¶ 12} The admission of evidence generally rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Myers, 97 Ohio St.3d 335,2002-Ohio-6658, ¶ 75, citing State v. Maurer (1984),15 Ohio St.3d 239, 265, 473 N.E.2d 768. "An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable." Myers, supra, citing State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 13} Officers Braun and Ables saw Pullen throw what looked like a baggie into a fenced yard as he ran. Moreover, only Pullen was in the area when the baggie of crack was thrown. In fact, Pullen was already in custody when the officers first saw Skipper enter the area. Because Skipper could not have thrown down the crack at issue in this case, we cannot say that the trial court abused its discretion in excluding evidence of Skipper's previous criminal history as irrelevant. Therefore, Pullen's first assignment of error is without merit and is overruled.
 {¶ 14} Pullen's second assignment of error:
 {¶ 15} "THE TRIAL COURT ERRED BY ALLOWING THE STATE TO PRESENT PREJUDICIAL TESTIMONY THAT THE NEIGHBORHOOD IN WHICH MR. PULLEN WAS ARRESTED HAD A HISTORY AS BEING ONE WHERE MANY CRIMES AND DRUG OFFENSES OCCUR."
 {¶ 16} Here Pullen argues that the trial court committed reversible error by allowing the State to introduce evidence that the neighborhood in which Pullen was arrested was a high crime area. We disagree.
 {¶ 17} Initially, we note that because defense counsel did not object to this testimony at trial, our review is limited to plain error.State v. Cardosi (1997), 122 Ohio App.3d 70, 77, 701 N.E.2d 44, citingState v. Wickline (1990), 50 Ohio St.3d 114, 119-20, 552 N.E.2d 913. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise."Wickline, supra, at 120, citations omitted.
 {¶ 18} As the parties have acknowledged, we have previously found that testimony regarding the high-crime nature of the area where an offense occurred is irrelevant to a defendant's guilt or innocence and should not be offered. See, e.g., State v. Maddox (June 29, 2001), Montgomery App. No. 18389; State v. Dancy (July 24, 1992), Montgomery App. No. 13023. However, we also concluded that "the character of the area * * *, while irrelevant, is too remote from the issues of guilt or innocence" to be prejudicial. Dancy, supra. In light of the strength of the State's case against Pullen, we cannot say that but for the admission of evidence that Pullen was arrested in a high crime area, the outcome of the trial clearly would have been different. Thus, the admission of that evidence does not rise to the level of plain error. Accordingly, Pullen's second assignment of error is overruled.
 {¶ 19} Pullen's third assignment of error:
 {¶ 20} "THE TRIAL COURT ERRED BY EXCLUDING LARRY DEHUS FROM TESTIFYING AS AN EXPERT FOR THE DEFENSE."
 {¶ 21} Pullen insists that the trial court should have allowed defense witness Larry Dehus to testify as a fingerprint expert. However, after a careful review of all of the testimony, we agree with the trial court that Dehus is not an expert in developing latent fingerprints.
 {¶ 22} "Determinations of expert witness qualifications to testify are within the sound discretion of the trial court." State v. Awkal
(1996), 76 Ohio St.3d 324, 331, 667 N.E.2d 960, citing State v. Bidinost
(1994), 71 Ohio St.3d 449, 453, 644 N.E.2d 318. See, also, Evid.R. 104(A). According to Evid.R. 702, a witness may testify as an expert if all of the following apply: "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." It is clear that Dehus lacks the necessary specialized knowledge, skill, experience, training, or education to be deemed an expert in the development of latent fingerprints. Accordingly, Dehus does not qualify as an expert witness in developing latent fingerprints.
 {¶ 23} Pullen's argument that Dehus is an expert in the area of forensic science misses the mark. The area of forensic science encompasses numerous disciplines. A forensic scientist who is an expert in one area of forensic science is not automatically an expert in all areas.
 {¶ 24} Although Dehus testified to minimal knowledge of fingerprint procedures, his testimony was discredited by that of Kenneth Betz, the director of the crime lab. Betz testified that Dehus was hired as a biologist, and his responsibilities centered on serology and trace evidence other than fingerprints. Dehus did not work on fingerprint cases; he was never given the duty of developing latent prints at a crime scene or on pieces of evidence, nor in analyzing prints developed by someone else. Moreover, Dehus was never trained to work in the fingerprint section of the crime lab (a single seminar is not enough to make one an expert). While he did have supervisory duties over fingerprint examiners, those duties were limited to personnel matters, not technical matters. Accordingly, the trial court properly concluded that Dehus was not an expert in the development of latent fingerprints. Because the trial court did not abuse its discretion in excluding Dehus' testimony as a fingerprint expert, Pullen's third assignment of error is overruled.
 {¶ 25} Pullen's fourth assignment of error:
 {¶ 26} "THE TRIAL COURT ERRED BY ALLOWING THE ADMISSION OF STATE'S EXHIBIT TWO (THE CRACK COCAINE AND BAGGIE) BECAUSE THE STATE FAILED TO PRESERVE EVIDENCE THAT COULD HAVE BEEN EXCULPATORY TO THE DEFENSE."
 {¶ 27} Here Pullen argues that the trial court should not have admitted the crack or the baggie because the State failed to preserve fingerprints that might have been on the baggie and that might have been exculpatory. However, not only did Pullen fail to object to the admissibility of this evidence on this basis, there is simply no evidence that Pullen's conjectures are accurate.
 {¶ 28} The "[f]ailure to object to evidence at trial constitutes a waiver of any challenge to the admission of that evidence on appeal."State v. Wilson (Oct. 24, 1997), Champaign App. No. 96-CA-22, citingState v. Crawford (1989), 60 Ohio App.3d 61, 62, 573 N.E.2d 784. See, also, Evid.R. 103(A)(1). Because Pullen failed to object at trial to the admissibility of the baggie and the crack on the basis of his claim that fingerprints on the bag were not preserved, he has waived his right to raise that issue for the first time on appeal.
 {¶ 29} In any event, the evidence, including the testimony of Pullen's own expert, shows that Ronald Huston's techniques would have preserved any prints that were on the bag. Yet, Huston found no latent prints of value on the baggie. Moreover, Pullen did not even ask his own court-appointed expert to examine the baggie for fingerprints. There is no evidence that the State destroyed fingerprints that were on that baggie or that any such fingerprints would have been exculpatory.
 {¶ 30} Because the trial court did not err in admitting the baggie and the crack into evidence, Pullen's fourth assignment of error is overruled.
 {¶ 31} Pullen's fifth assignment of error:
 {¶ 32} "THE TRIAL COURT ERRED BY ALLOWING THE ADMISSION OF STATE'S EXHIBIT TWO (THE CRACK COCAINE AND BAGGIE) BECAUSE THE STATE FAILED TO ESTABLISH A CHAIN OF CUSTODY THAT LINKED THE EXHIBIT TO THE DEFENDANT."
 {¶ 33} Finally, Pullen claims that the trial court erred in admitting the crack and baggie because the State failed to establish a chain of custody and that the evidence was tampered with and/or destroyed. After a careful review of the record, we disagree with both contentions.
 {¶ 34} As Pullen concedes, the State need not prove a perfect, unbroken chain of custody in order for evidence to be admissible. Statev. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 57, citation omitted; State v. Richey, 64 Ohio St.3d 353, 360, 1992-Ohio-44, citations omitted. Instead, the chain-of-custody evidence goes to the weight of the evidence, not its admissibility. Richey, supra.
 {¶ 35} Nevertheless, in this case the State did offer evidence of the chain of custody of the baggie and the crack. Officers Ables and Braun saw Pullen throw what appeared to be a baggie into a fenced yard as he ran. Officer Ables then recovered a baggie containing crack from that location and gave it to Officer Hall, who placed it in the property room. Officer Hall later submitted the baggie of crack to the crime lab where it was tested by Gary Shaffer and Ronald Huston, both of whom identified the evidence at trial.
 {¶ 36} Clearly, the trial court did not abuse its discretion in admitting either the baggie or the crack into evidence at trial. Accordingly, Pullen's fifth assignment of error is overruled.
 {¶ 37} Having overruled all five of Pullen's assignments of error, the judgment of the trial court is affirmed.
FAIN, P.J. and GRADY, J., concur.