OPINION
Defendant-appellant Frank M. Nash, II appeals the June 7, 1999 Judgment Entry of the Stark County Court of Common Pleas which memorialized a jury verdict of guilty and imposed sentence accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On March 25, 1999, appellant was indicted by the Stark County Grand Jury on one count of having weapons while under disability in violation of R.C. 2923.13. The matter proceeded to a jury trial on June 2, 1999. The testimony at trial was, at best, conflicted. Appellee first presented the testimony of Sgt. John Ditmore, the officer in charge of the investigation. Sgt. Ditmore testified he responded to an incident at 923 Roland in Canton, Ohio, but was redirected to a new location on 9th Street. Sgt. Ditmore and several other Canton City police officers proceeded to the 9th Street location looking for two suspects and the weapon which was involved in the incident on Roland. As a result of the investigation, Sgt. Ditmore testified the officers recovered a weapon, arrested appellant and appellant's brother. During his interview with appellant, Sgt. Ditmore asked appellant if there was any reason why he might have thrown a gun down the basement steps of the 9th Street residence. At that time, appellant told Sgt. Ditmore "you got me." T. at 119. Sgt. Ditmore also testified appellant admitted to shooting the gun the same day. T. at 119. Officer Michael Peterson was the next to testify. Officer Peterson testified he knocked on the door of the 9th Street residence. A female answered and gave him permission to enter. Immediately thereafter, Officer Peterson observed appellant quickly pull up his shirt, pull a small semi-automatic from his waistband, turn a corner and throw the weapon down a stairwell. Officer Peterson immediately moved toward the gun, making sure the weapon was secure. T. at 137-138. Officer Peterson testified he brought appellant back to headquarters and read him his Miranda rights. Appellant admitted he had the gun earlier the same day. T. 140. This statement was not tape recorded, written or transcribed. Finally, the State presented the testimony of Dennis Florea, a firearms and fingerprint examiner with the Canton-Stark County Crime Laboratory. Mr. Florea testified testing of the gun revealed no finger prints, but this was not unusual. T. at 177. Clifton Wilson, appellant's friend, was the first to testify for the defense. Mr. Wilson explained he was at the 9th Street residence when the police arrived. He and a number of friends were playing cards just before the police arrived. Mr. Wilson testified appellant stood right next to him throughout the entire incident, and never left the kitchen. Mr. Wilson testified Officer Peterson entered the house and went straight downstairs to the basement. Kirby Johnson was next to testify. Mr. Johnson worked with appellant at DLH. Mr. Johnson testified his grandmother drove him and appellant to work on the morning of March 17, 1999, and then picked them both up after work. Mr. Johnson's shift was from 6:45 a.m. until 2:45 p.m. Mr. Johnson testified appellant was at work the entire time. The defense then presented appellant's testimony. Appellant testified Officer Peterson came in the front door and went to the basement steps. As Officer Peterson walked into the basement, appellant and his brother were both talking to Sgt. Ditmore in the kitchen. Appellant testified he made no statement to Officer Peterson he had fired a gun earlier in the day, and appellant further denied ever having possession of a gun on March 17, 1999. Appellant admitted on cross-examination he had previously been convicted of sexual battery. Felicia Norwood was the next to testify. Ms. Norwood owned the 9th Street residence. She confirmed the police officers were given permission to enter her home but testified she never saw appellant or anyone else with a gun in her home. George Woods, a friend of appellant, was the last to testify for the defense. Mr. Woods corroborated the testimony offered by Mr. Wilson, that appellant never left the kitchen. Further, Mr. Woods testified he did not see appellant with a gun that evening. The State called Maurice Nash, appellant's brother, as a rebuttal witness. Mr. Nash testified he had a gun in his possession on March 17, 1999. He obtained this gun "off the streets." The prosecution attempted to refresh Mr. Nash's memory with a previous written statement to police. In his statement, marked as State's Exhibit 3, Mr. Nash indicated appellant gave him the gun. Officer Ditmore was recalled on rebuttal and verified State's Exhibit 3 accurately reflected the transcript of the statement taken from Mr. Nash on March 17, 1999. After hearing the evidence, the jury found appellant guilty of one count of having weapons while under a disability. In a June 7, 1999 Judgment Entry, the Stark County Court of Common Pleas memorialized the jury verdict of guilty and sentenced appellant to ten months incarceration. It is from this judgment entry appellant prosecutes this appeal, assigning the following as error:
 I. THE DECISION OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY COUNSEL'S FAILURE TO PERFORM ESSENTIAL DUTIES, THEREBY VIOLATING APPELLANT'S CONSTITUTIONALLY PROTECTED RIGHTS.
 III. THE TRIAL COURT COMMITTED PLAIN ERROR ITS [sic] FAILURE TO CORRECT CERTAIN OBVIOUS, PREJUDICIAL ERRORS.
 IV. STATEMENTS MADE BY THE PROSECUTOR IN HER CLOSING ARGUMENT WERE SO INFLAMMATORY AND PREJUDICIAL AS TO DEPRIVE APPELLANT OF HIS CONSTITUTIONALLY PROTECTED RIGHTS.
 V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO GRANT APPELLANT'S OBJECTION IN VOIR DIRE TO THE JUROR ARRAY.
 I
In his first assignment of error, appellant contends the decision of the trial court was against the manifest weight and sufficiency of the evidence. We disagree. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. In order to find appellant guilty of having weapons while under a disability, the State had to prove each relevant element of R.C. 2923.13. The statute provides in pertinent part:
 (A) * * * no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
 (2) The person * * * has been convicted of any felony offense of violence.
* * *
Appellant maintains the testimony of both Officer Peterson and Sgt. Ditmore is inherently unreliable because the officers provided conflicting testimony as to where and exactly when each entered the house. Further, appellant maintains the credibility of each officer was further strained when their recollections of the house floor plan were at odds with the testimony of Ms. Norwood, the owner of the house. Appellant argues the defense witnesses, Clifton Wilson, Kirby Johnson, Felicia Norwood and George Woods each provided testimony which conflicted with the officers, thereby making the officers' testimony unreliable. We find the jury did not lose its way in determining appellant had or carried a firearm while under the legal disability of a prior conviction for felony of violence. Officer Peterson testified he saw appellant pull a semi automatic handgun from his waistband and toss it down the basement stairway. Maurice Nash told police he obtained a gun from his brother on the day of the incident. We find nothing in the record to indicate the jury lost its way. It appears the jury chose to believe Officer Peterson as a more credible witness than those presented by the defense. This choice was, of course, completely within the province of the jury. This same evidence, in combination with appellant's own admission he had been convicted of a felony of violence was sufficient to prove the offense of having weapons while under a disability. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains he was denied effective assistance of trial counsel. Specifically, appellant argues his trial counsel's failure to file a motion to suppress evidence derived from the improper search of the Norwood home, failure to file a motion to suppress statements made by appellant and/or his brother, Maurice Nash, prior to miranda warnings, and a failure to object to the admission of the gun because a proper chain of custody was not established each amounted to ineffective assistance of counsel. We will address each argument in turn. The standard by which we review claims of ineffective assistance of counsel is well established. Pursuant to Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373; State v. Combs, supra. Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland at 689, 104 S.Ct. At 2065,80 L.Ed.2d at 694-695; State v. Wickline (1990), 50 Ohio St.3d 114, 126,552 N.E.2d 913, 925. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of a trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U.S. 364, 113 S.Ct. 838, 842-843,122 L.Ed.2d 180, 189-191. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. Accordingly, we will direct our attention to the second prong of the Strickland test. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. Trial strategy is generally not regarded as ineffective assistance of counsel. See: State v. Coleman (1989), 45 Ohio St.3d 298, 308.
 SEIZURE OF THE GUN
Officer Peterson testified he had permission to enter the home. This testimony was corroborated by the owner of the home, Felicia Norwood. Officer Peterson testified almost immediately after he gained access to the house, he saw appellant pull up his shirt, remove a semi automatic gun from his waistband and begin to throw it down the basement stairwell. We find Officer Peterson's seizure of the gun under these circumstances does not violate the Fourth Amendment. Accordingly, we find no ineffective assistance of counsel in trial counsel's failure to raise the issue of a warrantless search via a motion to suppress.
 APPELLANT'S STATEMENTS TO POLICE
Appellant maintains he was interviewed by Officers Ditmore and Peterson prior to his arrest and prior to being read his Miranda rights. Appellant further contends these statements were extremely inculpatory and his trial counsel was ineffective for failing to file a motion to suppress these statements. We disagree. At trial, Sgt. Ditmore testified as follows:
 Q. Okay. And did you have occasion at any time to talk to the Defendant?
A. Yes, I did.
 Q. And when you spoke to him, did the Defendant make any statements to you?
A. Yes, he did.
Q. And what were those statements?
 A. During my interview with the Defendant, I had told him that I had, that I had been respon — that I had been the one to respond to the house on Ninth Street and that we were investigating an incident that took place on Rowland, we were looking for a weapon that was involved in the incident on Rowland.
 During this interview I asked the Defendant would there be any reason why an officer would have seen him walk to the basement door and throw a gun down to the basement. At that particular time the Defendant stated to me you got me. He said, my brother had given me the gun and had taken the gun and thrown it in the basement when you guys arrived.
 I also asked him, I said, would there be any reason why you would have fired that gun today if we did some tests on your hands. At that time he replied yes, I was target practicing in the cemetery earlier today, that might be why you might find some residue on my hands from shooting the gun.
T. at 118-119.
Sgt. Ditmore was not specific about the time this interview took place and the record does not reveal whether it took place at the scene or at police headquarters. However, Officer Peterson also testified about similar inculpatory statements:
Q. Did you have occasion after that to talk to this Defendant?
A. Yes, I did.
Q. And what, if anything, did he tell you?
 A. Okay, we brought him back to headquarters where I mirandized him. At that point addressed the issue of his weapon. The Defendant stated that he had had the weapon earlier that day. He admitted — he actually admitted at the scene that, that I saw him throw the gun. Actually he told me he was like Peterson, can we talk; I said, sure. So we went in and talked, and that's when he admitted to me that he had the gun earlier that day when he was in the cemetery.
T. at 140.
The state of the record neither affirmatively demonstrates appellant's inculpatory statements were made while in custody at the scene, nor demonstrates such statements were the product of an interrogation. The record before this Court does not demonstrate the filing of a motion to suppress would have been successful. Accordingly, appellant cannot establish prejudice on this record. Therefore, his claim for ineffective assistance of counsel fails.
 ADMISSION OF THE GUN
Finally, appellant maintains his trial counsel was ineffective for failing to object to the admission of the gun in light of defects in the chain of custody. We disagree. We agree with appellee; it appears trial counsel used the handgun found in the house, notwithstanding any failure to perfect a chain of custody, to support the defense. Trial counsel never denied a handgun was found in the house but rather denied it was appellant who possessed the gun or tossed the gun down the basement stairs. In fact, trial counsel used the fact appellant's fingerprints were not found on the gun to support appellant's defense. Trial tactics or strategies are viewed with the presumption that effective legal counsel was rendered. State v. Bradley (1989), 42 Ohio St.3d 136,144. We find no ineffective assistance in trial counsel's decision not to object to the admission of a gun found at the crime scene, where, as here, the defense is able to elicit exculpatory evidence from its admission, notwithstanding an imperfect chain of custody. Appellant's second assignment of error is overruled.
 III IV
In his third assignment of error, appellant maintains the trial court committed plain error by failing to correct obvious, prejudicial errors. Specifically, appellant points to the admission of the handgun, the warrantless search of Ms. Norwood's home, the incriminating statements made to police, and certain statements made by the prosecutor during closing argument which amounted to prosecutorial misconduct. Because appellant alleges prosecutorial misconduct in his fourth assignment of error for the same statements discussed in the third assignment of error, we shall address the assignments together. Crim.R. 52(B) provides:
 (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. The standard to reverse for plain error is a higher one to meet than that for ineffective assistance of counsel. Because we have already reviewed appellant's first three arguments under an ineffective assistance of counsel analysis and found none to have merit, appellant's arguments as to each of these first three claims must also fail under a plain error analysis. We now turn our attention to the alleged prosecutorial misconduct claim. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990),51 Ohio St.3d 160, cert. denied 112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." State v. Cornwell (1999), 86 Ohio St.3d 560, 570-571. Where defense counsel fails to object to alleged incidents of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. State v. Slagle (1992), 65 Ohio St.3d 597, 604. The prosecution is entitled to a certain degree in latitude in summation. State v. Liberatore (1982), 69 Ohio St.2d 583, 589. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157. Appellant first complains the following statement by the prosecutor amounted to misconduct:
 And all documents required were, were here for you. All documents that counsel is entitled to were furnished to him.
[Appellant's trial counsel]: Objection, Your Honor.
 THE COURT: Well, again, ladies and gentlemen, I want you to speculate just on the evidence that you've heard and the law that I will give to you. You're not to draw inferences. What the lawyers say is not evidence. The evidence that you have before you is either what I have indicated to you as a stipulation or you heard from the witness stand. The closing arguments they're designed to assist you. They are not evidence. You will rely on your collective memories as to what the evidence is in this case.
Let's proceed.
T. at 98-99.
We note the prosecutor's statement, although technically outside the evidence established at trial, nevertheless did not amount to a misstatement of the factual evidence presented at trial. Even though we find the statement inappropriate, we find the trial court's immediate issuance of a curative instruction cleansed an potential prejudice. Appellant next objects to the following statement:
 [Prosecutor]: In regard to the to the swab of the hands, the officers didn't tell you he was in the cemetery that morning, and they didn't give you a time when they knew he was in the cemetery. They didn't know. They just indicated that that's a statement he made to them. You can draw your own inferences as to why he made that statement.
 What the officer told you is we told him we were going to swab his hands and suddenly he told them that he was in the cemetery that morning and had test fired the gun.
[Appellant's trial counsel]: objection.
 THE COURT: Again, this is closing argument. Counsel, remember this is your last argument, and I think you're at about the time so wrap it up.
(Emphasis added.)
Appellant specifically objects to the prosecutor's alleged misstatement of the evidence and notes the State failed to produce any evidence from the swab of appellant's hand. When read in its full context, we disagree with appellant's interpretation of the prosecutor's statement. We do not interpret the statement as to saying a swab was taken, but rather merely that the police advised appellant they were going to swab his hands. We find nothing improper about the prosecutor's statement. Accordingly, this portion of appellant's fourth assignment of error is overruled. Finally, appellant maintains the prosecutor improperly vouched for the credibility of the police officers in making the following statement:
 [Prosecutor]: I would just ask again that you use reason and common sense, that you consider who had a motive to lie in this matter. What possible motive could the officers have to say they walked in the door, saw a gun and confiscated that off of this Defendant? What motive, what bias or interest could they possibly have?
 And then we had all the witnesses who have known this young man all their lives who have told you they don't want him to go to prison.
 So just ask yourself who had a motive and what possible purpose could those officers have come in, could Officer Peterson have come in and said — and told you I saw the gun, I went down the basement and got it.
T. at 100. We note there is no objection to this final statement. Accordingly, all but plain error is waived. We find nothing improper in the prosecutor's statement. Appellant's fourth assignment of error is overruled.
 V
In his final assignment of error, appellant argues the trial court erred in failing to take action on appellant's objection to the juror array. Specifically, appellant objected to the fact that there were no African Americans in the panel of jurors brought to the court. The Ohio Supreme Court recently addressed the law surrounding a challenge to the venire in State v. Johnson (2000), 2000 WL 107217, (to be reported at 88 Ohio St.3d 95).
In Taylor v. Louisiana (1975), 419 U.S. 522, 95 S.Ct. 692,42 L.Ed.2d 690, the United States Supreme Court indicated that the Sixth Amendment guarantee of a jury trial "contemplates a jury drawn from a fair cross-section of the community." Id. at 527,95 S.Ct. at 696, 42 L.Ed.2d at 696. However, the court held that there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." (Citations omitted.) Id. at 538, 95 S.Ct. at 702, 42 L.Ed.2d at 700. Id. at *19.
At trial, the following exchange took place on the record:
 [APPELLANT'S TRIAL COUNSEL]: I'd like to put a Batson objection on the jur — on — to this jury because it's not — my primary — there's no African-Americans on the jury. And with that that's all I have to say for my own protection, but I think at this time that the venire of people here is not representative of, of the community.
 THE COURT: Well, again, the motion's overruled. The, the objection is overruled. This is selected by the same manner in which all juries are selected in Stark County by random selection, and the fact that there is no African-Americans on here is not an indictment of the process but rather just the system itself did not generate an particular ones. Could be — they could all be from wherever. But the, the objection's overruled. Let's proceed.
T. Vol. 1 at 16-17.
Appellant has failed to meet his burden to show his jury pool was not a fair cross-section of the community as required by Taylor. Therefore, we overrule appellant's fifth assignment of error.
The June 7, 1999 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: HOFFMAN, J. GWIN, P.J. and EDWARDS, J. concur.