DECISION AND JUDGMENT ENTRY
Ceola G., the biological mother of Anisha N., Kaelynn G., and Kevin G., III., appeals a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, granting permanent custody of Kaelynn and Kevin III to Lucas County Children's Services (LCCS). Because we conclude that the trial court acted properly after finding by clear and convincing evidence that transfer of permanent custody to LCCS was in the best interest of the children, we affirm.
 Facts
This case arises out of a complaint filed by LCCS for permanent custody of Kaelynn G. and Kevin G. III, the children of Ceola G. and Kevin G., Jr. The other child involved in this matter, Anisha N., the child of Ceola G. and Allahaundro N., is in the custody of her father. In fact, Anisha N.'s status is only germane because all three children were found to be dependent on the same day.
This court, in an earlier case, In the Matter of Anisha N., KaelynnG., and Kevin G., III (Apr. 13, 2001), Lucas App. No. L-00-1301, ruled that there was not a sufficient record to prove that these three children were dependent and remanded it to the trial court for actions consistent with the decision. The complaint was then dismissed without prejudice. On July 12, 2001, LCCS filed a new complaint regarding three children were dependent based upon both information already known to the juvenile court as well as new information that had come to light since the juvenile court had last dealt with the case. At a dependency hearing held on September 24, 2001, Ceola stipulated to the fact that her children were dependent. The children, therefore, were placed in the temporary custody of LCCS, and a caseplan was established that the parents were to follow. This included the requirement that Ceola was to be assessed by Dr. Hamme, the psychologist agreed upon by all the parties, and was to follow his directives.
On December 6, 2001, at a further hearing, LCCS relinquished temporary custody of Anisha N. Her father, Allahaundro N., was then granted legal custody, and Ceola G. was given visitation rights — with the caveat that if Ceola missed two consecutive visits with Anisha, her visitation rights would be terminated. This quickly came to pass, and Ceola lost her visitation rights with Anisha.
LCCS, thereafter, filed a motion for permanent custody as to Kaelynn G. and Kevin G., III on June 3, 2002. During this time, additional caseplans were filed by the family's LCCS caseworker in an attempt to garner compliance from Ceola G. and Kevin G., Jr. But it was all for naught. Ceola and Kevin Jr., failed to comply with even the most routine requests that the family's caseworker made — including the assessment to be done by Dr. Hamme.
As the time for the permanent custody trial approached, Ceola filed a motion to dismiss, a motion for summary judgment, and a motion in limine with the juvenile court premised upon rights she argued she had under the Federal Rules of Civil Procedure. This motion was denied on November 1, 2002, and the case proceeded to trial on November 5, 2002.
At trial, two witnesses were called: the LCCS caseworker and the guardian ad litem. Both recounted how Ceola and Kevin Jr. made little to no attempt to even slightly comply with the caseplan established by the family's LCCS caseworker. There was also testimony that Ceola and Kevin Jr. were still in a very mentally and physically abusive relationship. The safety of the children was a very real fear if they were reunited with their parents.
After receiving the testimony at trial and reviewing the record in the case, the juvenile court judge awarded permanent custody of Kaelynn and Kevin III to LCCS on December 2, 2002. It is from this judgment and from the denial of Ceola's motions on November 1, 2002 that Ceola appeals.
 Appellant's Assignments of Error
1. "The trial court erred in ignoring the mandate of this court and in denying Ceola G.'s pro se motion to dismiss and motion for summary judgment and motion in limine."
2. "Ceola G. was denied effective assistance of counsel."
3. "The trial court's grant of permanent custody of Kaelynn G. and Kevin G., III., was not supported by clear and convincing evidence."
 Applicability of Anisha N. Ito the Present Case
At the outset, it bears noting that the majority of Ceola's argument states that we, as well as the trial court, are restricted in our actions by a case we decided a little over two years ago that concerned appreciably the same parties and appreciably the same issues. In theMatter of Anisha N., Kaelynn G., and Kevin G., III (Apr. 13, 2001), Lucas App. No. L-00-1301. However, the present case arises out of a separate complaint filed after the earlier case was dismissed, so our decision in the earlier case is irrelevant to our decision in the present case.
 Abuse of Discretion Standard
The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219; See also, State v. Adams (1980), 62 Ohio St.2d 151,157; Nakoff v. Fairview General Hospital (1996), 75 Ohio St.3d 254, 256. Following this standard, an appellate court has limited review. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of the trial court. See Pons v.Ohio State Medical Board. (1993), 66 Ohio St.3d 619, 621.
 Appellant's First Assignment of Error
The gist of Ceola's first assignment of error is the trial court acted improperly when it denied Ceola's motion filed October 28, 2002. She is incorrect.
Ceola's motion demanded that the juvenile court grant her requests under the Federal Rules of Civil Procedure. Juvenile court proceedings, however, are governed by the Rules of Juvenile Procedure. Juv.R. 1. Furthermore, the Federal Rules of Civil Procedure "govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81." Fed.R.Civ.P. 1. As the trial court correctly noted in its November 1, 2002 judgment entry, "While the Federal Rules of Civil Procedure may in any given instance/case provide some guidance to a state court, said rules are not binding. Federal rules do not supersede State rules in a State case and obviously the present case is wholly a State case in both form and substance. Thus the Federal rules cited by the movant herein are found not applicable and/or not binding."[1] Therefore, it was not an abuse of discretion when the juvenile court denied Ceola's motion was not well-taken.
Ceola is also incorrect in asserting that when the juvenile court dismissed the remanded case and LCCS filed a new complaint that spoke to new issues concerning the children, it went against the mandate of our earlier decision In the Matter of Anisha N., Kaelynn G., and Kevin G.,III (Apr. 13, 2001), Lucas App. No. L-00-1301. On a number of occasions, we — as well as other appellate courts — have upheld permanent custody decisions where either complaints or motions were dismissed and refiled. In re Tammy M., 6th Dist. No. L-02-1108,2003-Ohio-492 at ¶ 8; Lutheran Homes Society, Family and YouthServices v. Department of Human Services of Hancock County, Ohio (July 13, 2001), Lucas App. No. L-00-1187; In the Matter of Demetrius H. (Mar. 9, 2001), Lucas App. No. L-00-1300; In the Matter of Randy L. (July 24, 1998), Lucas App. No. L-97-1339; In the Matter of Thompson, 10th Dist. Nos. 02AP-557, 02AP-558, 2003-Ohio-580 at ¶ 31; In the Matter ofKing and Blevins (Aug. 11, 1999), Adams App. No. 99CA671. Therefore, it was not an abuse of discretion when the juvenile court allowed for JC-00-7102 to be dismissed and JC-01-92612 to be filed by LCCS. Appellant's first assignment of error is found not well-taken.
Ineffective Assistance of Counsel Standard
The United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, 687, set forth the standard for reversing a defendant's conviction based on ineffective assistance of counsel. The two-prong test requires a showing that (1) counsel's performance was so deficient as to not function as the counsel guaranteed by the Sixth Amendment, and (2) counsel's errors were prejudicial and deprived the defendant of a trial whose result was reliable. Id. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
The Ohio Supreme Court stated "the Strickland court strongly cautioned courts considering the issue of ineffective assistance of counsel that '[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Issac, 456 U.S. 107, 133-134
[102 S.Ct. 1558, 1574, 1575, 71 L.Ed.2d 783, 804] (1982). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."' Id., 466 U.S. at 689,104 S.Ct. at 2065, 80 L.Ed.2d at 694." State v. Frazier (1991),61 Ohio St.3d 247, 253.
The Ohio Supreme Court has also given a great amount of deference to the strategy employed by counsel at trial. In fact, it ruled in State v.Carter (1995), 72 Ohio St.3d 545, 558, that "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Strickland at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694-695;State v. Wickline (1990), 50 Ohio St.3d 114, 126, 552 N.E.2d 913, 925."
To this, the Ohio Supreme Court added in State v. Mason (1998),82 Ohio St.3d 144, 157-158, that "[W]e will not second-guess trial strategy decisions, and `a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Strickland, 466 U.S. at 689. See also, State v. Davis
(1991), 62 Ohio St.3d 326, 349-350, 581 N.E.2d 1362, 1381."
Even if Ceola's counsel's actions were somewhat suspect, the Ohio Supreme Court ruled in State v. Smith (2000), 89 Ohio St.3d 323, 328, "even if we viewed counsel's trial strategy as questionable, such a strategy should not compel us to find ineffective assistance of counsel. In these situations, we normally defer to counsel's judgment. State v.Clayton (1980), 62 Ohio St.2d 45, 49, 16 Ohio Op.3d 35, 37,402 N.E.2d 1189, 1192."
Appellant's Second Assignment of Error
The three instances of ineffective assistance of counsel raised by Ceola in this case do not show deficient performance. Specifically, Ceola complains that her counsel: 1.) had her stipulate to the issue of dependency, 2.) did not meet with her outside of scheduled court hearing dates, and 3.) did not file a brief when Anisha's father was granted custody. None of these actions complained of, however, rise to the level of prejudice needed to reverse the finding of permanent custody.
First, Ceola claims the dependency of her children was stipulated to at the September 24, 2001 hearing in front of Magistrate Woods. It must be noted, however, that Magistrate Woods went through an extended colloquy with Ceola at that hearing to assure that Ceola wanted to stipulate to the dependency of her children, and Ceola responded repeatedly that she did. Therefore, the record illustrates that Ceola took an active personal role in the decision to stipulate to the dependency of her children. Also, documents filed with the juvenile court from the guardian ad litem and the LCCS caseworker — prior to the hearing — would have provided the magistrate with more than enough information to determine that the children in question were dependent. Consequently, even if Ceola did not take such an active role in the proceeding determining dependency, the decision to stipulate to dependency was a matter of sound trial strategy, and we must give that decision its proper deference.State v. Bell (1990), 70 Ohio App.3d 765, 769.
Second, Ceola's argues that her counsel was ineffective because he did not have contact with her outside of scheduled hearings. This assertion is misleading because the record shows that Ceola's attorney attempted to contact her on a number of occasions, but Ceola did not respond. Also, the record shows that Ceola skipped meetings set up by her LCCS caseworker where her attorney was present. In fact, these repeated meetings with the LCCS caseworker and her attorney were scheduled because Ceola stated to her caseworker that she would not talk with her caseworker without her attorney present. Ceola, however, did not attend these meetings that were scheduled at her request.
We have noted on more than one occasion that "[b]ecause a parent facing the termination of parental rights has been equated with a criminal facing the death penalty, Ohio courts are unanimous that great care must be taken to ensure that due process is used in parental termination proceedings. In the Matter of: Adam M. (Aug. 20, 1999), Lucas App. Nos. L-97-1207, L-98-1379, unreported. But Ohio courts have also recognized that a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding. See, In the Matter of: James [B.] (Mar. 4, 1996), Stark App. No. 1995 CA 00070, unreported." In the Matter of TrevorW., Steven D., and Chancelor W. (Nov. 30, 2001), Lucas App. No. L-01-1371. See also, In the Matter of Rachael G. and Renee G., 6th Dist. No. L-02-1306, 2003-Ohio-1041 at ¶¶ 12-13. In this case, Ceola did not make any effort to communicate with her counsel outside of the court hearings she attended. As such, she is not entitled to the due process argument that would normally apply to her had she made a good faith effort to communicate with her counsel.
Third, Ceola argues that her attorney in a related matter was ineffective by not filing a brief with this court. This claim is not properly before this court, however, because the judgment entry that would give rise to that cause of action was not appealed from in this matter. Appellant's second assignment of error is found not well-taken.
Permanent Custody Clear and Convincing Evidence Standard
The standard for appellate review in a permanent custody case is whether the trial court had clear and convincing evidence to make a permanent custody adjudication. Recently, in the case of In the Matter ofBaby Girl Doe, we ruled that, "the R.C. 2151.414 permanent custody determination must be supported by clear and convincing evidence. In reHiatt (1993), 86 Ohio App.3d 716, 725, 621 N.E.2d 1222. On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing standard. In re Wise (1994), 96 Ohio App.3d 619, 626,645 N.E.2d 812. The `clear and convincing evidence' standard is a higher degree of proof than the `preponderance of the evidence' standard generally utilized in civil cases but is less stringent than the `beyond a reasonable doubt' standard used in criminal cases. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. An appellate court will not substitute its own judgment for that of a trial court applying a `clear and convincing evidence' standard where some competent and credible evidence supports the trial court's factual findings. Id.; C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 8 Ohio Op.3d 261, 376 N.E.2d 578, syllabus." In the Matter of Baby Girl Doe,149 Ohio App.3d 717, 2002-Ohio-4470 at ¶ 89; See also In the Matterof Nicholas R., 6th Dist. App. No. H-02-053, 2003-Ohio-1414 at ¶ 18.
We have also noted that "[t]his standard applies to cases decided under either R.C. 2151.353(A)(4) or R.C. 2151.414(B)(1)(d). Id. and In theMatter of Andrew B., 6th Dist. No. L-01-1440, 2002-Ohio-3977 at ¶ 53." In the Matter of Nicholas R., 6th Dist. App. No. H-02-053,2003-Ohio-1414 at ¶ 19.[2]
 Permanent Custody Best Interest of the Child Standard
As we stated recently: "[t]he standard for determining the best interest of the child in permanent custody hearings is set by R.C.2151.414(D). The major factors to be considered include, without limitation: the relationship of the child with others in his life; the child's wishes; how long the child has spent in custody; and the need for secure placement. See R.C. 2151.414(D)(1) through (4). The statute then cross-references factors in R.C. 2151.414(E)(7) through (11) as part of the non-exclusive list. These relate to a variety of parental wrongs visited upon a child, from certain felony convictions to abandonment and involuntary termination of parental rights. We have noted that the legislature has chosen the `best interests of the child' standard to ensure that our trial courts protect children of this state. In theMatter of Reynolds (Mar. 7, 1986), Lucas App. No. L-85-154. The same philosophy has been adopted by other states. See Mich.Comp. Laws 722.23; Minn.Stat. 518.17.
"As seen, R.C. 2151.414(D) is written broadly and requires the juvenile court judge to consider all relevant factors before terminating parental rights. It is not a decision to be made lightly. The juvenile court has discretion in determining a child's best interest. The judge views the witnesses and observes their demeanor, gestures, and voice inflections. These observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. See SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 Ohio B. 408,461 N.E.2d 1273; cf. Miller v. Miller (1988), 37 Ohio St.3d 71,523 N.E.2d 846. A permanent custody order should not be overturned unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140 (defining `abuse of discretion'). In reAwkal (1985), 95 Ohio App.3d 309, 316, 642 N.E.2d 424. See also, In reMarshall (July 12, 1996), Geauga App. No. 95-G-1934; In re Shchigelski
(Oct. 20, 2000), Geauga App. No. 99-G-2241." In the Matter of NicholasR., 6th Dist. No. H-02-053, 2003-Ohio-1414 at ¶ 20-21.[3]
 Appellant's Third Assignment of Error
The gist of Ceola's third assignment of error is that the juvenile court erred in granting permanent custody of two of her children to LCCS. Ceola is incorrect. The juvenile court reviewed the complete record and all the evidence in front of it and determined that LCCS proved by clear and convincing evidence that permanent custody should be granted to the agency and this action would be in the best interest of the child. Specifically, the juvenile court, in its December 2, 2002 judgment entry, ruled that "[u]pon consideration of the witness testimony; the exhibits; and all other matters of record, the Court finds pursuant to ORC 2151.353(A)(4), and ORC 2151.414(E)(1),(4), (10), (14), and (16) by clear and convincing evidence that the minor children, Kaelynn and Kevin G., cannot and should not, be placed with either parent within a reasonable period of time, and pursuant to ORC 2151.414(D) an award of permanent custody to LCCS is in the children's best interest."[4]
We will now address the factors of R.C. 2151.414(E) that the juvenile court referred to in kind. As we have stated recently in the case of Inthe Matter of Nicholas R., 6th Dist. No. H-02-053, 2003-Ohio-1414 at ¶¶ 24-27, "a reviewing court must address certain questions when R.C. 2151.414(E)(1) is an issue:
"1.) Was the child was placed outside the home?
"2.) Was the agency diligent in trying to remedy the situation through reasonable caseplanning?
"3.) Did the parent fail continuously and repeatedly to remedy the condition that caused the child to be removed?
"4.) Were all elements proved by clear and convincing evidence?"
In this case, the record shows that the answers to all are yes. Both Kaelynn and Kevin III have been under the temporary custody of LCCS for over 12 consecutive months. LCCS put into action a reasonable caseplan for both the mother and the father of Kaelynn and Kevin III; in fact, the LCCS caseworker amended the plan on a number of occasions to make it so Ceola and Kevin, Jr. could be more compliant. This, however, did not help; both parents failed to comply. The situation that led to the removal has still not been remedied because Ceola has not severed herself from the abusive relationship she is in, and the great danger of injury to the children, both physical and mental, still exists. Especially troubling is the fact that Ceola would not even take the simple step of seeing the court appointed psychologist she had selected or, for that matter, the psychologist she contacted once in Fort Wayne, Indiana, where she lives with Kevin Jr. In fact, her residence with Kevin Jr. even violates a court order.
At trial, furthermore, a significant amount of evidence was provided that showed that both parents did not satisfy the requirement of R.C.2151.414(E)(4) because neither parent attempted to visit their children over the past two years. In fact, when communication was made, it caused both children to regress and act out. Most damaged by this is Kaelynn who has been diagnosed with post traumatic stress disorder and reactive detachment disorder. These facts also show how R.C. 2151.414(E)(10) applies in this case, for Kaelynn and Kevin Jr. have been abandoned by their parents. Both parents have opted to live in Fort Wayne, Indiana instead of in Toledo where their children reside. They do not attempt to visit when given the opportunity. They have volitionally chosen to separate themselves from the lives of their children, which ironically has allowed both Kaelynn and Kevin Jr. to make significant advances in overcoming the mental, and even physical, damage that occurred while they lived with their parents.
Both Ceola's and Kevin Jr.'s failure to address the pervasive issues of physical and mental abuse in their household show that they are unwilling to supply the basic necessity of preventing their children from suffering both physical and mental abuse and neglect as R.C. 2151.414(E)(14) demands. Kevin Jr. has taken no steps to address his anger management issues, thus creating an ever present threat for his children. Ceola has not left Kevin Jr., as she stated she would and as the juvenile court has demanded. The danger is too great to return the children to their parents.
As for 2151.414(E)(16), the statute's catch-all provision, other issues surrounding Ceola's behavior explain why permanent custody should be held by LCCS. Ceola habitually did not attend scheduled office meetings and administrative reviews through LCCS. More than once she asked her attorney to be present, but she did not attend herself. She failed to obtain a psychological assessment, is quite telling. Kaelynn's post-traumatic stress disorder and her reactive detachment disorder, directly attributed to her mother's and father's conduct, is also important.
Upon review of the record in front of us, we find the trial court acted properly when it ordered that it was in the best interest of the children to have LCCS take permanent custody of Kaelynn and Kevin III. As a result, Ceola's third assignment of error is found not well-taken.
On consideration whereof, we find that substantial justice was done to the party complaining and affirm the judgment of the Lucas County Court of Common Pleas, Juvenile Division. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Richard W. Knepper, J., Judith Ann Lanzinger, J., CONCUR.
[1] Emphasis in original.
[2] R.C. 2151.353(A)(4) provides:
"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
"(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 [2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
"* * *
R.C. 2151.414(B)(1)(d) provides:
"(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
"* * *
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
"For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home."
[3] R.C. 2151.414(D) provides:
"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
"For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
[4] R.C. 2151.414(E)(1),(4), (10), (14), and (16) provide:
"(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [ 2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
"(1) Following the placement of the child outside the child's home and notwithstanding reasonable caseplanning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
"(10) The parent has abandoned the child.
"* * *
"(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
"* * *
"(16) Any other factor the court considers relevant."