OPINION
On May 22, 1986, a jury convicted Dennis Winkfield, defendant-appellant, of aggravated murder of his wife, Diane Winkfield, as well as kidnapping and gross sexual imposition of his teenage stepdaughter (fifteen years old at the time of trial). The state sought the death penalty and the case proceeded to a mitigation hearing. The jury returned a finding that the state had not proved beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances and recommended a sentence of life imprisonment with parole eligibility after serving thirty years. By judgment entry filed August 1, 1986, the court imposed a sentence of thirty years on the homicide count, seven to twenty-five years on the kidnapping count, plus an additional three years of actual incarceration for the use of a firearm and a one-year determinate sentence on the gross sexual imposition count. The court ordered that all sentences were to be served concurrently.
No direct appeal was taken from this conviction. However, by judgment entry filed June 22, 1999, this court sustained defendant's motion for a delayed appeal and appointed counsel to assist him.
Defendant has asserted the following assignments of error:
First Assignment of Error
 The trial court erred by overruling a motion to suppress evidence illegally seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I, of the Ohio Constitution.
Second Assignment of Error
 The trial court erred permitting the state to use peremptory challenges in a racially discriminatory fashion, thereby denying appellant equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution.
Third Assignment of Error
 The trial court erred by permitting the introduction of irrelevant, inflammatory and unfairly prejudicial issues thereby depriving Defendant-Appellant of a fair trial.
Fourth Assignment of Error
 Defendant-Appellant was deprived of due process of law because of the failure of the court to record all grand jury proceedings as required by Crim. R. 22.
The police discovered the body of Diane Winkfield, dead for three or four days, in her apartment from the consequence of two gunshot wounds fired into her upper body from a distance of about two feet away.
The teenage stepdaughter of defendant stated that her mom was going to get a divorce against defendant because of his actions against her. The court overruled a defense objection and motion for mistrial based upon this comment. Angela further testified that she arrived from school on December 5, 1984 and went to her mother's room to watch television. About five minutes after 4:00, she saw defendant in the apartment. She screamed and he told her to shut-up. According to Angela, defendant had two guns with him and had a roll of tape in his pocket. He tied her arms and legs together and put a sock or rag in her mouth.
Angela said that when her mother arrived at the apartment about three hours later, she heard her mother say, "Dennis don't kill me." She saw defendant drag her mother up the stairs and then shoot her twice in the side. She said defendant brought her a yellow nightgown and attempted to have intercourse with her and that defendant took her mother's car and kept her involuntarily in his custody for the next three days. She stated she told no one about these events because she was frightened.
The police found defendant at the residence of Danette Banks and recovered a .25 caliber pistol from him at that time. The policemen also seized defendant's maroon nylon bag from the residence without obtaining a search warrant.
Defendant testified in his own behalf. He denied that he had any sexual contact or conduct with Angela and said that he and his wife had a good relationship even after she had filed for divorce from him. He said that he let himself into the apartment with a key that his wife had given him. The stepdaughter, Angela, was there and he said that she sprayed him with mace and he struck her. He then said he tied her up with tape from a roll that was on the nightstand. When his wife arrived, the two started arguing. His nylon bag was open and she could see his pistol inside. She tried to walk up the stairs past him and he testified that she pulled a .25 caliber handgun from her coat pocket. His gun fired twice according to him. He picked up his wife and took her to Angela's room and tied her hands and feet with tape. He claimed that his wife was alive and talking at the time that he left. He said that he left with Angela who was not restrained in any way (and she stayed with him) the next three days.
Defendant first asserts that the trial court erred by overruling a motion to suppress evidence obtained by the illegal seizure of defendant's nylon bag from the premises of Danette Banks where police located defendant and arrested him. Even if that were true, which we need not decide, the remedy would be to suppress evidence obtained as a result of that seizure. There is no indication either in defendant's brief or in the record that seizure of the bag allowed admission of evidence into the trial that would not otherwise have been produced. The defendant admitted that he used his weapon to fire the fatal shots. The only disputed issue in regard to the murder charge that came before the jury was under what circumstances were the shots fired. No evidence seized from defendant's nylon bag had any relevance to that determination. Thus, the contents of the bag contributed nothing to the conviction. Defendant's first assignment of error is overruled on the basis that there was no prejudice to him.
Defendant secondly contends that the trial court erred in permitting the state to use peremptory challenges in a racially discriminatory fashion, thereby denying appellant equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution.
The United States Supreme Court has held that the constitutional requirement prohibiting the selection of a jury based on racial discrimination applies to preclude a state from using its peremptory challenges in a racially discriminatory fashion. Batson v. Kentucky (1986), 476 U.S. 79. In Batson, the court stated as follows:
 Accordingly, the component of the jury selection process at issue here, the State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause. Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, *** the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant. Id. at 89. [Citations omitted.]
Later cases extended the Batson doctrine to include peremptory challenges of prospective jurors based on race even though the race of the defendant and victim are the same. In this case, both the defendant and the alleged victims were African-American.
The key issue is whether one or more jurors were excused for racially discriminatory reasons rather than a reason related to the prosecutor's view concerning the outcome of the case.
The trial court and parties engaged in discussion prior to the exercise of peremptory challenges where the prosecutor, over objection of defense counsel, argued that there was a requirement of eliminating all African-American jurors beforeBatson would apply to establish a pattern of racial discrimination. Nevertheless, the prosecutor set forth his race-neutral reasons for dismissing each African-American juror when he used a peremptory challenge to do so.
In deciding whether the reasons given by the prosecutor were a sufficient nondiscriminatory reason, it must be kept in mind that exercise of peremptory challenges is far from an exact science. In a trial, body language, facial expressions or hesitation in answering questions may well be a factor, although it is not one that is ordinarily apparent to an appellate court. Thus, the trial court is in a far better position than an appellate court to determine whether the reasons asserted by the prosecutor are based on causes other than racial discrimination.Hernandez v. New York (1991), 500 U.S. 352, 111 S.Ct. 1859, 1869. If a prosecutor offers race-neutral reasons for the peremptory challenge, a defendant much show that these reasons are pretextual to prevail. Id.
We will examine the reasons accepted by the trial court in permitting the state to exercise peremptory challenges of the African-Americans jurors. The first such prospective juror, Mathew Spencer, was one the prosecutor first attempted to challenge for cause based on the fact that he had arrived at the trial on the wrong day and then left early on the day he was supposed to appear and finally arrived late on the third day. The prosecutor was concerned that he had no job, no transportation, and no real ties to the community. He argued that the juror should be excused for cause because of that reason. The trial court rejected the challenge for cause. The prosecutor then exercised a peremptory challenge. We find the trial court did not abuse its discretion in finding that the reason asserted was race-neutral. It is legitimate that the party having the burden of proof beyond a reasonable doubt who is trying a case of capital punishment dimensions should desire to have jurors who are more responsible than this juror appeared to be. The prosecutor appeared to be genuinely concerned about the juror being able to attend the expected lengthy trial.
African-American jurors Margaret Wesley and Kenneth Kellam were both dismissed because they expressed some opposition to the death penalty. Ms. Wesley also exercised reservations about the length of trial and job obligations. They were not subject to challenge for cause because they said that they would sign a death penalty verdict if the case called for it. However, it is a legitimate reason for the state to exercise peremptory challenges against perspective jurors in a death case who are opposed to the death penalty because it tends to make it more likely their view would affect their vote concerning the outcome of the case. State v. Cook (1992), 65 Ohio St.3d 516. While recognizing that demonstrated opposition to the death penalty is a legitimate reason for exercising a peremptory challenge, defendant seeks to compare the excuse of these two jurors to the seating of a white juror who also expressed opposition to the death penalty. However, the questions and answers in the voir dire of each juror were somewhat different and this court is unable to second guess the trial court in finding that a legitimate reason for exercising a peremptory challenge was a pretext for racial discrimination.
A fourth African-American juror, John Fairley, was excused because of a conflicting scheduled vacation. That is a valid nonracial reason and peremptories are often exercised, particularly by the party who bears the burden of proof, when those facts come to light.
A fifth African-American juror, Gary Forest, was excused by the state's peremptory challenge for a variety of reasons, including no substantial ties to the community, unemployment and no activities. The prosecutor was also uncomfortable about answers the prospective juror gave about the death penalty. According to the prosecutor, the juror was interested in only his jury duty service money and not in the justice system. The prosecutor articulated legitimate concerns and the court did not abuse its discretion in finding race-neutral reasons.
The trial court is the gatekeeper in regard to determination of whether sufficient nondiscriminatory reasons are given for exercising peremptory challenges which must be justified under Batson,supra. Either individually or collectively, we do not find that the trial court abused its discretion in accepting the reasons given by the prosecutor.
Defendant's second assignment of error is overruled.
Defendant thirdly asserts that the trial court erred by introducing irrelevant, inflammatory and unfairly prejudicial testimony thereby depriving him of a fair trial.
When defendant's stepdaughter, Angela Henry, was testifying, the prosecutor asked her why she and her mother had moved in with their friend, Mabel Gooden, for two and a half weeks. Angela replied that her "mom was going to get a divorce against Dennis Winkfield because of his actions against me." Defense counsel moved for a mistrial based upon this assertion. The trial court overruled the motion for a mistrial, but inferentially offered to instruct the jury to disregard the remark which appellant's counsel declined. Defendant contends that the trial court abused its discretion in failing to grant a mistrial because the statement of Angela Henry was admitted in violation of Evid.R. 404(B) and R.C. 2945.59. Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The first issue is whether the statement is even in violation of Evid.R. 404(B). Appellant's counsel in his opening statement and through questions had already established that, as is often the case with stepchildren, there had been a conflict between appellant and his wife about her daughter. The jury was not presented with any evidence about whether the conflict had been discipline or jealousy of the attention Mrs. Winkfield gave to her daughter or any of the other many possible reasons for conflict between stepparents and teenage children. While subsequent events may have given rise to a reasonable inference that the actions were sexual, the statement itself was not inflammatory enough to justify the granting of a mistrial.
Moreover, the trial court would have instructed the jury to disregard the remark, if defense counsel had requested. We find no abuse of discretion on the part of the trial court.
Defendant's third assignment of error is overruled.
Lastly, defendant asserts that he was deprived of due process of law because of the failure of the court to record all grand jury proceedings as required by Crim.R. 22. It appears from the record that the grand jury testimony of only one witness, Katrina Coleman, was recorded in violation of Crim.R. 22. SeeState v. Grewell (1989), 45 Ohio St.3d 4. However, the defendant must show prejudice from the court's failure to record grand jury proceedings before a defendant is eligible for a new trial. InState v. Wickline (1990), 50 Ohio St.3d 114, the requirement of showing prejudice was articulated even though it was a death penalty case in which the penalty was actually imposed. In this case, defendant received a life sentence.
Since there has been no showing of prejudice, defendant's fourth assignment of error is overruled.
Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.