[Cite as *State v. Trollinger*, 2012-Ohio-6369.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110340 |
| | | TRIAL NO. B-1006545 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| MARIO TROLLINGER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  May 30, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SUNDERMANN, Presiding Judge.**

{¶1}    Mario Trollinger appeals his convictions for murder with a specification and having a weapon while under a disability.  We conclude that his nine assignments of error do not have merit, so we affirm the judgment of the trial court.

{¶2}    On September 20, 2010, Kevin Isaac was shot multiple times as he waited at a bus stop.  He died from his injuries.  A surveillance camera at a community center across the street from the bus stop showed Ronnell Parks approach Isaac and shoot him.  Parks was later apprehended by Cincinnati police officers.

{¶3}    Parks, who was 16 years old at the time of the shooting, testified that Trollinger had given him the gun with which he had shot Isaac.  According to Parks, Trollinger had told Parks to rob Isaac and had threatened to kill Parks's uncle if Parks did not commit the robbery.  Parks testified that Trollinger had told him to shoot Isaac if Isaac did not give Parks any money, and that Trollinger had a second gun with which he threatened Parks.  Parks stated that he had approached Isaac and had told him to give him "something."  When Isaac did not respond, Parks shot him four times.  Parks testified that he had then run behind some buildings and had returned the gun to Trollinger.  According to Parks, Trollinger told him to take off his shirt and run into the woods.

{¶4}    Deron Thomas testified that he had been in the area where the shooting had occurred.  Thomas testified that he had seen Trollinger give a gun to Parks and had seen Parks shoot Isaac.

{¶5} Juan Allen testified for the defense. According to Allen, he had seen Parks in the area the night before the shooting. Allen testified that he believed that Parks had had a gun at that time, and that he believed that Parks had been waiting to rob Allen's brother and friend.

{¶6} At the conclusion of the trial, the jury found Trollinger guilty as charged. The trial court sentenced Trollinger to 15 years to life for murder with a three-year sentence for the gun specification and to five years for having a gun while under a disability. The aggravated robbery count was merged with the murder count. The aggregate sentence was 23 years.

{¶7} In his first assignment of error, Trollinger asserts that the trial court erred when it allowed the assistant prosecuting attorney to certify that he would not disclose the names of the state's lay witnesses prior to trial. We review the trial court's regulation of discovery under an abuse-of-discretion standard. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983).

{¶8} Crim.R. 16 regulates the discovery process between the state and a criminal defendant. Under Crim.R. 16(I), "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call[.]" But if "[t]he prosecuting attorney has reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness * * *," he may certify to the court that he is not disclosing the state's witness list. Crim.R. 16(D)(1). Upon motion of the defense counsel, the prosecuting attorney's certification of nondisclosure is subject to review by the trial court. Crim.R. 16(F). During the in-camera hearing, the trial court reviews the prosecuting attorney's certification for an abuse of discretion on the part of the prosecuting attorney. *Id.*

{¶9} In this case, the assistant prosecuting attorney certified that he would not disclose the names of witnesses because the witnesses had indicated that that they were fearful of Trollinger. Pursuant to Loc.R. 7(K) of the Court of Common Pleas of Hamilton County, General Division, an in-camera hearing was held before the presiding judge. During the hearing, Cincinnati police officer Sandy Hanes testified that one of the witnesses had seen Trollinger give Parks a gun and had seen Parks return the gun to Trollinger after the shooting. When the witness confronted Trollinger about the shooting, Trollinger allegedly told him, "[k]eep your mouth shut or you're next." Three other people who worked in the area where the shooting occurred expressed their fear of testifying against Trollinger. Based on the testimony of the police officers, the presiding judge determined that the assistant prosecuting attorney had not abused his discretion in refusing to disclose the names of the lay witnesses. And pursuant to Crim.R. 16(F)(5), the court ordered the assistant prosecuting attorney to disclose the list prior to the commencement of trial. We are unable to conclude that the presiding judge's determination with respect to the nondisclosure was an abuse of discretion.

{¶10} Within this assignment of error, Trollinger also contends that the trial court further erred when it did not order the disclosure of the state's witness list until after the jury had been sworn in. But both at trial and in his appeal, Trollinger did not demonstrate that he was prejudiced by the timing of the disclosure. Accordingly, we conclude no abuse of discretion occurred in this regard. The first assignment of error is overruled.

{¶11} In his second assignment of error, Trollinger asserts that the trial court erred when it did not grant his motion to dismiss or his motion for a new trial. Before either side made its opening statement, Trollinger moved to dismiss the

charges against him or, in the alternative, for a mistrial. Trollinger contended that the state had withheld exculpatory evidence in violation of his due process rights and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

{¶12} Pursuant to the trial court's decision on the state's certification of nondisclosure, the state disclosed its witness list and witnesses' statements after the jury had been sworn in. Included was a copy of Jasmine Cornett's statement made to a police officer shortly after the shooting. According to the statement, Cornett claimed that another woman, Waneisha McCloud, had told her that a person named Mickeal Mingo had said that he had given Parks the gun. Trollinger contended that the state had improperly withheld this statement.

{¶13} In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Ohio Supreme Court has clearly stated, however, that no *Brady* violation can exist when, as in this case, the evidence in question was presented to the defense during the trial. *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990). Accordingly, we conclude that no *Brady* violation occurred here.

{¶14} Even if we were to conclude that the state had improperly withheld the evidence, Trollinger's motion to dismiss or, in alternative, for a mistrial was properly denied, as Trollinger did not demonstrate that the evidence was material to his guilt. For Cornett's statement to be material, there had to be a reasonable probability that the result of the trial would have been different. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the

syllabus. The statement at issue in this case consists of hearsay and a vague description about what had allegedly occurred. And following the trial, during the hearing on his motion for a new trial, Trollinger's attorneys were unable to demonstrate specifically how earlier disclosure of the statement would have changed their strategy. We are unable to conclude that there was a reasonable probability that the outcome of the trial would have been different had the state disclosed the statement prior to trial.

{¶15} We conclude that the trial court did not err when it denied Trollinger's motion to dismiss or, in the alternative, for a mistrial. The second assignment of error is overruled.

{¶16} We consider Trollinger's next three assignments of error together. In the third, he asserts that his convictions were not supported by sufficient evidence. In the fourth, he asserts that his convictions were against the manifest weight of the evidence. And in the fifth, he asserts that the trial court erred when it overruled his Crim.R. 29 motion for an acquittal. We conclude that none of these assignments of error has merit.

{¶17} The standard of review for a sufficiency claim and for the denial of a Crim.R. 29 motion for an acquittal is the same. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *Id.* at 387.

{¶18} Trollinger was charged with complicity in the commission of aggravated robbery and murder. Under R.C. 2923.03(A), Trollinger could be found

6

complicit in the aggravated robbery and murder of Isaac if he purposely "[s]olicit[ed] or procure[d] another to commit the offense[s]" or "[a]ided or abet[ted] another in committing the offenses." We conclude that the state presented sufficient evidence of Trollinger's complicity in the offenses. The state also presented sufficient evidence that Trollinger had a weapon while under a disability. *See* R.C. 2923.13(A)(2). Further, having reviewed the record, we are unable to conclude that the jury lost its way in rendering its guilty verdicts. Trollinger takes issue with the testimony of Parks, but the jury was in best position to judge the credibility of Parks and the other witnesses. We overrule the third, fourth, and fifth assignments of error.

{¶19} The sixth assignment of error is that the trial court erred in imposing an aggregate prison term of 23 years' incarceration. Our review of Trollinger's sentences has two parts. First, we must determine whether the sentences were contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 14. Then, if the sentences were not contrary to law, we must review the sentences to determine whether the trial court abused its discretion. *Id.* at ¶ 17. Trollinger's sentences fell within the applicable ranges for the offenses for which he was convicted. R.C. 2929.02; R.C. 2929.14. And we are unable to conclude that the trial court abused its discretion in imposing the sentences. The sixth assignment of error is overruled.

{¶20} In his seventh assignment of error, Trollinger asserts that the trial court erred when it permitted Parks to testify. Trollinger contends that Parks, who had a history of mental illness and mental retardation, was incompetent to testify as a witness. *See* Evid.R. 601(A); R.C. 2317.01. Absent an abuse of discretion, competency determinations of the trial judge will not be disturbed on appeal. *State v. Clark*, 71 Ohio St.3d 466, 469, 644 N.E.2d 331 (1994). Here, the trial court

conducted a voir dire of Parks and concluded that Parks was competent to testify. We conclude that trial court did not abuse its discretion in so concluding. The seventh assignment of error is overruled.

{¶21} The eighth assignment of error is that the trial court erred when it allowed testimony about Trollinger's involvement in a prior robbery. Trollinger contends that the court improperly allowed testimony about Trollinger's alleged involvement in the robbery of Parks's uncle two months before Parks shot Isaac. Although the state mentioned in its opening statement that Trollinger had threatened Parks that, if he did not commit the robbery of Isaac, "what happened to your Uncle Dink is going to happen to you," the state did not ask Parks about the robbery during its direct examination. Rather, defense counsel questioned Parks extensively about the robbery. Having elicited Parks's testimony about the earlier robbery during cross-examination, Trollinger cannot now claim that he was prejudiced. We conclude that any error in admitting the testimony was invited error. *See State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 102. The eighth assignment of error is overruled.

{¶22} In his final assignment of error, Trollinger asserts that his equal-protection rights were violated when the trial court permitted the state to exclude potential jurors based on race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

{¶23} Evaluation of a *Batson* challenge has three steps: "First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the challenge. Third, the trial court must determine whether, under all the circumstances, the opponent has proven purposeful racial discrimination." *State v. White*, 85 Ohio St.3d 433, 436,

709 N.E.2d 140 (1999), citing *Batson* at 96-98. A trial court's determination that the state did not have a discriminatory intent will be reversed only if it is clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶24} In this case, the state used two of its peremptory challenges to excuse two African-Americans from the jury. When Trollinger's counsel objected to the dismissal of the first prospective juror, the prosecutor stated that he was excusing her because she was a medical assistant at Planned Parenthood, which, in his view, meant he might not be able to make her understand the importance of a lost life, and that she had indicated that she really did not want to be on the jury. With respect to the dismissal of the second African-American from the jury, the prosecutor stated that the man had had six prior convictions for driving under the influence and had expressed concern about the media's perception of certain verdicts. The trial court overruled Trollinger's objections, concluding that the prosecutor had given race-neutral explanations with respect to both potential jurors. We hold that the trial court's conclusions were not clearly erroneous. The ninth assignment of error is overruled.

{¶25} We therefore affirm the judgment of the trial court.

Judgment affirmed.

**HENDON** and **FISCHER, JJ.,** concur.

Please note:

    The court has recorded its own entry this date.